2000 UT 29

BEAVER COUNTY, Davis County, Iron County, Juab County, Millard County, Morgan County, Rich County, Salt Lake County, Summit County, Tooele County, and Utah County, Petitioners and Cross–Respondents,

v.

WILTEL, INC., and Utah State Tax Commission, Respondents and Cross–Petitioner.

Nos. 980169, 980135, 980185.

Supreme Court of Utah.

Jan. 28, 2000.

Bill Thomas Peters, Salt Lake City, for the Counties.

Maxwell A. Miller, Randy M. Grimshaw, Salt Lake City, and Martin Charlton, Georgia, for WilTel.

Jan Graham, Att'y Gen., John C. McCarrey, Michelle Bush, Asst. Att'ys Gen., Salt Lake City, for the Tax Commission.

HOWE, Chief Justice:

¶ 1 Taxpayer telecommunications company WilTel, Inc., seeks review of a Utah State Tax Commission ("Commission") decision subjecting WilTel's property to central assessment on a unitary basis; employing cost and yield capitalization to value its tangible property; and using gross book value in calculating the value of its taxable Utah property. Beaver County, Davis County, Iron County, Juab County, Millard County, Morgan County, Rich County, Salt Lake County, Summit County, Tooele County, and Utah County ("Counties") challenge the Commission's determination that intangible property, intangible value, and intangibles are synonymous for tax purposes under Utah Code Ann. § 59–2–1101(2)(g), which exempts intangible property from taxation. The Counties also seek review of the Commission's ruling that privilege tax does not apply to intangibles.

## BACKGROUND

¶ 2 WilTel is a provider of long-distance telecommunications services. As of January 1, 1995, WilTel owned approximately 11,000

miles of fiberoptic cable and microwave equipment, with access to an additional 40,000 miles of fiberoptic cable through network sharing and lease arrangements with other carriers such as AT&T, MCI, and Sprint. The Commission centrally assessed WilTel for 1995 under Utah Code Ann. § 59–2–201(1)(a) because it "[o]perates as a unit across county lines." The Commission's Property Tax Division ("Division") assessed WilTel's Utah taxable property as of January 1, 1995, at $39,635,000, based on the Division's nationwide correlated system value for WilTel of $1,450,000,000 and a gross book value Utah allocation factor of 2.83%.

¶ 3 WilTel appealed the assessment to the Commission and moved for partial summary judgment. In its motion, WilTel asserted that it was indistinguishable from locally assessed resellers of telecommunications services and, therefore, its tangible property should be locally assessed, using the cost approach employed for locally assessed property. WilTel also asserted that the assessment includes intangibles which are not taxable under Utah law.

¶ 4 The Division filed a cross-motion for partial summary judgment, arguing that WilTel had failed to establish that locally assessed telecommunications services were "similarly situated" to WilTel, that the cost approach ("cost less depreciation") to assessment would undervalue WilTel's property, and that this departure from fair market value would discriminate against similarly situated centrally assessed taxpayers such as AT&T, MCI, and Sprint. The Division also sought a determination that "intangibles, as that phrase is used in Utah Code Ann. § 59–2–102(19), means other intangible 'property.' "

¶ 5 The Counties also objected to the Division's assessment and submitted an appraisal estimating WilTel's correlated system value at $2,342,293,100. The Counties used the gross book value-based 2.83% allocation fac-

tor proposed by the Division and determined the Utah allocation value to be $66,286,894.

¶ 6 The Commission held a hearing on WilTel's motion for partial summary judgment and on the Division's cross-motion. The Commission ruled that WilTel is a centrally assessed taxpayer, that the State is the appropriate assessing authority, and that the State is not required to use the same assessment methodology used by the Counties to value locally assessed property. The Division argued that the intangibles exemption under Utah Constitution article XIII, section 2(10) [1] and Utah Code Ann. § 59–2–1101(2)(g) [2] is restricted to intangible "property" and consequently intangible assets that cannot be characterized as property are not tax-exempt. The Commission disagreed and ruled that for the purposes of property tax valuation, intangible property, intangible assets, and intangible value are synonymous, noting that "[p]erhaps even more significant is that even if they were distinguishable, none would be taxable under Utah law." The Commission noted further, however, that "[t]here is a distinction ... between intangible property and the inherent features of a particular parcel of real property" and the value ascribed to such features is subject to property tax.

¶ 7 The Commission remanded the case to the parties to identify and quantify the intangibles and remove them from the assessment. Pursuant to the order, the Division revised the original assessment of the correlated system value to $1,375,000,000, yielding a Utah allocation of $37,249,110. In the revised assessment, the Division accepted WilTel's aggregate valuation of $85,300,000 for assembled work force, trademarks, and software, but rejected WilTel's asserted valuation of $1,594,000,000 for contracts, customer lists, and goodwill. WilTel had initially asserted a Utah allocation value of $7,564,132, relying on the methodology that it alleges is typically used by county assessors. Following the Commission's decision, WilTel sub-

---

1. "Intangible property may be exempted from taxation as property or it may be taxed as property in such manner and to such extent as the Legislature may provide, but if taxed as property the income therefrom shall not also be taxed." Utah Const. art. XIII, § 2(10).

2. "The following property is exempt from taxation: ... (g) intangible property." Utah Code Ann. § 59–2–1101(2)(g).

mitted an appraisal setting the unit value of its taxable property at $817,000,000 and employing a net book allocation factor of 1.9222%, resulting in a value of $15,704,000 for the taxable Utah property.

¶ 8 Because the parties were unable to agree on the value of the tax-exempt intangibles, the matter came before the Commission in a formal hearing for determination of value. In its findings of fact, conclusions of law, and final decision, the Commission summarized its previous rulings and found, *inter alia*:

[WilTel's] parent company is LDDS Communications, Inc. ("LDDS"), whose name was later changed to WorldCom Inc. Following AT&T, MCI and Sprint, LDDS is the fourth largest telecommunication company in the United States.

In the spring of 1994, LDDS announced its intention to acquire [WilTel]. On August 22, 1994, LDDS, The Williams Companies, and WTG Holdings Inc. executed a stock purchase agreement under which LDDS acquired [WilTel]. The transaction closed on January 5, 1995. The parties stipulated that the sale price was 2.5 billion dollars.

For the 1995 tax year, the [Division] assessed [WilTel] as a centrally assessed taxpayer. The assessment was performed on a unitary basis, consistent with assessments of other centrally assessed taxpayers.

¶ 9 The Commission concluded in its final decision that "separately valuing intangibles and deducting them from a unit valuation is impractical." The Commission found that neither the replacement cost new less depreciation nor the adjusted historical cost adjusted for entrepreneurial profit adequately accounted for goodwill or "for the enhanced value of assets in place and operating as a unit."

¶ 10 The Commission's final decision attempted to balance removing the intangibles and capturing the enhanced value of tangibles operating as a unit by "using a yield capitalization approach minus any growth factor and a time-adjusted historical cost indicator." The Commission "strongly discourage[d] the use of the direct capitalization

method and the stock and debt method using stock market indicators because of the tendency each has to impound intangibles at higher levels." The Commission determined that the cost approach and the yield capitalization approach should each be weighted 50% and that the appropriate cost indicator was $894,000,000 as determined by the Division's original appraisal. The Commission remanded the case to the Division "to calculate a yield capitalization value minus growth, to time-adjust the cost approach and to calculate the final value consistent with this decision."

¶ 11 In its amended findings of fact, conclusions of law, and final decision, the Commission recognized that "[t]he parties continue to disagree as to application of the Commission's order." The Commission consequently amended the order by directing the parties to separately submit their respective value conclusions and supporting memoranda to the Commission.

¶ 12 That done, the Commission issued its order ruling in favor of the Division's determination of value and setting the value of WilTel's Utah property at $30,555,790, based on a system value of $1,079,700,000 and a Utah allocation factor of 2.83%.

¶ 13 The Counties petitioned for reconsideration of the order, and WilTel, on that same date, petitioned this court for a writ of review. After the Commission denied the Counties' petition for reconsideration of the order, the Counties also petitioned this court for a writ of review. WilTel countered with a motion to dismiss the Counties' petition and appropriately perfected its own right to review. Thereafter, this court directed that the petitions be consolidated, with the Counties as petitioners and WilTel as cross-petitioner.

¶ 14 WilTel seeks review of the Commission's decision that unitary assessment by the Division was the appropriate method for determining the value of WilTel's property and that the Division was not obligated to use a cost basis for assessment. WilTel argues that the Commission's approving the Division's assessment violated WilTel's right to equal protection under the Fourteenth

Amendment to the United States Constitution, and its right to uniform operation of laws under article I, section 24, and article XIII,[3] sections 2 and 3 of the Utah Constitution. WilTel also maintains that the Commission's assessment includes nontaxable intangibles; objects to the Commission's averaging of cost and yield capitalization-based indicators in assessing the system value of WilTel's property; and challenges the Commission's use of gross book value rather than net book value in the equation calculating Utah's share of WilTel's total system value.

¶ 15 The Division and the Counties seek review of the Commission's ruling that "intangible property" as defined by Utah Code Ann. § 59–2–102(19) includes nonproperty intangible assets. The consolidated review also encompasses the Counties' contention that the privilege tax applies to intangibles.

## STANDARD OF REVIEW

¶ 16 When reviewing the Commission's formal adjudicative proceedings, we do so using a substantial evidence standard, granting deference to the Commission's written findings of fact. *See* Utah Code Ann. § 59–1–610(1)(a). A petitioner who challenges the Commission's findings of fact "must marshal all of the evidence supporting the findings of fact and show that despite the supporting facts and in light of the conflicting evidence, the findings are not supported by substantial evidence." *Salt Lake City Southern R.R. Co. v. State Tax Comm'n,* 987 P.2d 594, 598 (Utah 1999). Furthermore, petitioner "is obligated 'not only to show substantial error or impropriety in the assessment, but also to provide a sound evidentiary basis upon which the Commission could adopt a lower valuation.'" *Id.* at 598 (quoting *Utah Power & Light Co. v. State Tax Comm'n,* 590 P.2d 332, 335 (Utah 1979)). It is not our prerogative on review to reweigh

3. Article XIII, sections 2 and 3 specifically provide for uniform taxation.

4. The Due Process Clause states:
   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or

the evidence. Instead, we defer to the Commission's findings because, when reasonably conflicting views arise, it is the Commission's province to draw inferences and resolve these conflicts." *Utah Ass'n of Counties v. Tax Comm'n of Utah,* 895 P.2d 819, 821 (Utah 1995).

## ANALYSIS

### I. UNITARY ASSESSMENT STATUTE

#### A. Constitutionality

¶ 17 Utah Code Ann. § 59–2–201 provides in relevant part:

(1) By May 1 of each year the following property ... shall be assessed by the commission at 100% of fair market value, as valued on January 1, in accordance with this chapter:

(a) ... all property which operates as a unit across county lines, if the values must be apportioned among more than one county or state....

WilTel does not deny that it operates across county lines or that its taxable values must be apportioned among more than one county or state. Nonetheless, WilTel argues that the statute "is so ambiguous as to make reasonable minds guess as to its meaning," *State v. Mohi,* 901 P.2d 991, 1006 (Utah 1995), and therefore violates WilTel's right to due process of law under the Fourteenth Amendment to the United States Constitution[4] and article I, section 7 of the Utah Constitution.[5]

¶ 18 We begin our analysis with the understanding that "[t]he party attacking the constitutionality of a statute has the burden of affirmatively demonstrating that the statute is unconstitutional. Moreover, there is a strong presumption that tax statutes are constitutional." *Kennecott Corp. v. State Tax*

property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.
U.S. Const. amend. XIV, § 1.

5. "No person shall be deprived of life, liberty or property, without due process of law." Utah Const. art. I, § 7.

*Comm'n,* 858 P.2d 1381, 1384 (Utah 1993) (footnotes omitted).

¶ 19 WilTel cites various classes of enterprises that operate in multiple counties, including banks and a retail furniture chain, and also cable television companies, Internet service providers, and telecommunication resellers. It then argues that because the phrase "operates as a unit across county lines" may involve different combinations of physical, economic, and functional integration in different circumstances, the phrase is impermissibly vague. However, WilTel is a long-distance telecommunications carrier whose sole service depends upon the network of microwave and fiberoptic cable that connects across county and even state lines to carry messages for its customers. In contrast to a bank or retail outlet whose branch stores have value and in some cases could operate independently, WilTel exhibits complete physical, economic, and functional integration. Its value and mode of operation are entirely as a unit across county lines. In WilTel's case, Utah Code Ann. § 59–2–201(1)(a) does more than offer a precise and workable definition. It offers the only possible one. In *Adams Express Co. v. Ohio,* 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683 (1897), the United States Supreme Court noted:

> As to railroad, telegraph and sleeping car companies, engaged in interstate commerce, it has often been held by this court that their property, in the several States through which their lines or business extended, might be valued *as a unit for the purposes of taxation,* taking into consideration the uses to which it was put and all the elements making up aggregate value, and that a proportion of the whole fairly and properly ascertained might be taxed by the particular State .... The valuation was, thus, not confined to the wires, poles and instruments of the telegraph company ... but included the proportionate part of the value resulting from the combination of the means by which the business was carried on, a value existing to an appreciable extent throughout the entire domain of operation.

*Id.* at 220–21, 17 S.Ct. 305 (emphasis added) (citations omitted).

¶ 20 We need not decide here what combination of physical, functional, and economic integration meets the threshold for unitary operation, since WilTel satisfies all three. The fact that there may be circumstances in which a statute would be confusing does not prevent us from applying it in a case where the meaning is clear. *See Howe v. Tax Comm'n,* 10 Utah 2d 362, 364, 353 P.2d 468, 469 (1960). WilTel has failed to affirmatively demonstrate that the challenged statute is unconstitutionally vague as applied. Therefore, we hold that Utah Code Ann. § 59–2–201(1)(a) is constitutional.

### B. Central Assessment on a Unitary Basis

¶ 21 We upheld the validity of central assessment on a unitary basis in *Salt Lake City Southern Railroad,* 987 P.2d at 600. From a purely practical perspective, central assessment is the most rational way to determine the value of an enterprise whose function relies upon cross-boundary connections. In point of fact, the sum of assessments of local property made by a collection of counties each employing different valuation systems and competing for tax dollars could conceivably overestimate the value of a unitary enterprise's state-wide property. *See Sinclair Refining Co. v. State Tax Comm'n,* 102 Utah 340, 345, 130 P.2d 663, 665 (1942) (noting that sum of county assessments may be out of proportion with value of property).

¶ 22 The United States Supreme Court has long held that the Fourteenth Amendment "does not prevent the classification of property for taxation" and that "[t]he provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways." *Pacific Exp. Co. v. Seibert,* 142 U.S. 339, 351, 12 S.Ct. 250, 35 L.Ed. 1035 (1892) (internal quotation omitted). Therefore, we reaffirm that central assessment by the unitary method bears a constitutionally sufficient rational relationship to the legitimate state purpose of assuring that each property is "accountable for its

pro rata share of the burden of local government." *Rio Algom Corp. v. San Juan County*, 681 P.2d 184, 192 (Utah 1984) (internal quotation omitted).

¶ 23 The Commission distinguishes between "asset-based" enterprises, including telecommunications companies, and "resellers" on the basis of property ownership. Asset-based companies own their transmission facilities and are centrally or state assessed on the basis of complete system value. Resellers typically do not own facilities but rather repackage and sell transmission time that they buy or lease from facility owners. The Commission has identified and taxed WilTel as an asset-based entity. "Resellers," with which WilTel claims to be similarly situated, are locally assessed. WilTel contends that its central assessment on a unitary basis violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the uniform operation of laws provision of article I, section 24 of the Utah Constitution,[6] and the uniform taxation provision of article XIII, section 2(1) of the Utah Constitution.[7]

¶ 24 We recognize from the outset that " '[n]o scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact.' " *Rio Algom Corp.*, 681 P.2d at 191 (quoting *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973)). Therefore, "the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal assessments become subjects of criticism under the Equal Protection Clause." *Id.*

¶ 25 The Commission found in its amended final decision for the 1995 tax year that WilTel's "assessment was performed on a unitary basis, *consistent with assessments of other centrally assessed taxpayers.*" (Em-

phasis added.) WilTel argues that the assessment should not have been performed on a unitary basis because it is a reseller and therefore not properly a centrally assessed taxpayer. We have held that "the choice of valuation methodology is a question of fact" and "[t]he resulting determination of market value is a question of fact." *Salt Lake City Southern R.R.*, 987 P.2d at 598; *see also Schmidt v. State Tax Comm'n*, 980 P.2d 690, 691 (Utah 1999); *Alta Pacific Assocs., Ltd. v. State Tax Comm'n*, 931 P.2d 103, 109 (Utah 1997). Thus WilTel must marshal the evidence supporting the Commission's finding that it is an asset-based, centrally assessed taxpayer and then show that the evidence is insufficient. WilTel has failed to marshal the relevant evidence, although, as noted above, WilTel owns over 11,000 miles of cable plus various transmission facilities. Furthermore, according to the record, "[a]s of December 31, 1994, approximately 89 percent of the network of WilTel's nationwide long-distance traffic was routed over owned facilities."

¶ 26 WilTel has not only failed to marshal such evidence, it also has made no showing that the evidence is insufficient. Although WilTel has argued repeatedly that it is similar to resellers, it has made no attempt to prove its dissimilarity to other asset-based carriers.[8] Therefore, WilTel has failed to overcome the presumption in favor of the Commission's factual finding that WilTel properly belongs in the class of asset-based, centrally assessed taxpayers. In such a case, WilTel can only claim discrimination if it has been singled out and taxed inconsistently with other asset-based carriers. *See Kennecott Corp.*, 858 P.2d at 1388. WilTel has not made this argument. Thus this court has no basis on which to find a violation of article I, section 24 or article XIII, section 2 of the Utah Constitution.

---

6. "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24.

7. "All tangible property in the State, not exempt under the laws of the United States, or under this Constitution, shall be taxed at a uniform and equal rate in proportion to its value to be ascer-

tained as provided by law." Utah Const. art. XIII, § 2(1).

8. WilTel states that resellers were centrally assessed through the 1997 tax year. If this is the case, for the 1995 tax year there was no distinction between the assessing authority of asset-based entities and resellers.

## II.  ASSESSMENT OF WILTEL'S SYSTEM VALUE

### A.  Treatment of Intangibles

¶ 27 In the instant case, we have access to the price that actually was agreed upon by a willing owner and a willing purchaser. *See Kennecott Copper Corp. v. Salt Lake County*, 122 Utah 431, 434–35, 250 P.2d 938, 940 (1952). All of the parties accept the Commission's factual finding that in January of 1995 LDDS and other companies acquired WilTel for a stipulated sale price of $2,500,-000,000. Fair market value is firmly established.

¶ 28 Neither is there any disagreement about the role of fair market value in property tax assessment. None of the parties take issue with the portion of Utah Code Ann. § 59–2–201(1), which provides: "property ... shall be assessed ... at 100% of fair market value." Furthermore, all of the parties recognize Utah Code Ann. § 59–2–103, which states in pertinent part that property shall be assessed and taxed at a uniform and equal rate. The controversy in the case before us centers rather on the value of tax-exempt intangibles that must be deducted from the fair market value. The Utah Constitution authorizes taxation only of "[a]ll tangible property in the state, not exempt under the laws of the United States, or under this Constitution." Utah Const. art. XIII, § 2(1). Intangible property is additionally exempt from taxation under the Utah Constitution article XIII, section 2(10) of the Utah Constitution and Utah Code Ann. § 59–2–1101. However, the parties dispute whether (1) "intangible property" for tax-exemption purposes includes nonproperty intangible assets and value; (2) the privilege tax applies to intangibles; and (3) value-enhancing physical attributes of tangible property constitute tax-exempt intangibles.

### 1.  Definition of "Intangible" for Tax Purposes

■ ¶ 29 The Commission determined in its ruling on the motions for partial summary judgment and subsequent decisions that intangible property, intangible assets, and intangible value are all exempt from taxation under Utah law. WilTel agrees, but the Counties maintain that "intangible property" should be limited to property that is "capable of being separately owned, used, transferred, or merely held," and that nonproperty intangibles are "simply elements of value associated with another asset." However, that argument is refuted by Utah Code Ann. § 59–2–102(19) (Supp.1995):

> "Property" means property which is subject to assessment and taxation according to its value, but does not include moneys, credits, bonds, stocks, representative property, franchises, goodwill, copyrights, patents *or other intangibles.*

(Emphasis added.) The Commission correctly ruled that the terms "intangible property," "intangible asset," and "intangibles" are synonymous, and all intangibles are tax-exempt. We affirm that ruling.

### 2.  Application of the Privilege Tax

¶ 30 We next turn to the Counties' contention that the Commission erred in determining that intangible property is exempt from the privilege tax levied in Utah Code Ann. § 59–4–101. This is a question of law. As such, we review it for correctness and accord the Commission's decision no particular deference. *See* Utah Code Ann. § 59–1–610(1)(b); *Salt Lake City Southern R.R.*, 987 P.2d at 596.

¶ 31 Utah Code Ann. § 59–4–101(1)(a) provides, with exceptions not relevant here, that "a tax is imposed on the possession or other beneficial use enjoyed by any person of any real or personal property which for any reason is exempt from taxation, if that property is used in connection with a business conducted for profit." The Counties argue that the plain language of the statute applies to the exemption for intangible property under Utah Code Ann. § 59–2–1101(2)(g) because WilTel's intangible property is used in connection with a business for profit. The Counties also contend that all exemptions to the privilege tax are listed in section 59–4–101 and because intangible property is absent from the list, WilTel's intangibles are subject to taxation.

¶ 32 We disagree. Because we decide this issue on the ground that the Counties' pro-

posed application of section 59–4–101's privilege tax would be unconstitutional, we need not reach the arguments concerning the plain language of the statute.

¶ 33 Article XIII, section 2(10) of the Utah Constitution provides in relevant part: "Intangible property may be exempted from taxation as property or it may be taxed in such manner and to such extent as the Legislature may provide, but if taxed as property the income therefrom shall not also be taxed." In accordance with these provisions, the legislature has exempted intangible property from taxation as property under Utah Code Ann. § 59–2–1101(2)(g) and has instead chosen to tax its income. Utah Code Ann. § 59–7–101(31)(b) provides that " 'Utah taxable income' includes income from tangible or intangible property located or having situs in this state, regardless of whether carried on in intrastate, interstate, or foreign commerce."

¶ 34 We observed in *Thiokol Chemical Corp. v. Peterson*, 15 Utah 2d 355, 358, 393 P.2d 391, 393 (1964), that the privilege tax was enacted "to close any gaps in the tax laws by imposing a tax on any property possessed or used in connection with a business for profit which was otherwise exempt from taxation." However, intangible property is taxed on income and, therefore, while exempt from property tax, has not escaped taxation. There is no "gap" to close. Thus the application of the privilege tax to intangible property would constitute double taxation and defeat the intangible exemption. Because the State has chosen to tax the income from intangible property, it is prohibited from taxing the intangible property itself. The extension of the privilege tax to intangible property would violate this prohibition and would therefore be unconstitutional.

### 3. Enhanced Value

¶ 35 Article XIII, section 3(1) of the Utah Constitution states in relevant part that "[t]he Legislature shall provide by law a uniform and equal rate of assessment on all tangible property in the state, according to its value in money." Utah Code Ann. § 59–2–201(1) embodies that requirement: assessment of all nonexempt property shall be at 100% of fair market value. We have discussed the tax-exempt status of intangibles above. However, even excluding intangibles, the network structure of WilTel's physical transmission facilities makes them worth far more on the open market than mere wires, trenches, and transformer stations could command. Unitary property

> cannot be regarded as merely land, buildings, and other assets. Rather, its value depends on the interrelation and operation of the entire utility as a unit. Many of the separate assets would be practically valueless without the rest of the system. Ten miles of telephone wire or one specially designed turbine would have a questionable value, other than as scrap, without the benefit of the rest of the system as a whole.

Louis G. Bertane, *The Assessment of Public Utility Property in California*, 20 UCLA L.Rev. 419, 433 (1973), *quoted in Salt Lake City Southern R.R.*, 987 P.2d at 600.

¶ 36 WilTel maintains that this enhanced unitary value is a tax-exempt intangible. The Counties and the Commission view the enhancement as a taxable attribute of tangible property. The Commission used as an example a hillside home with a value-enhancing view, and proposed that the view is an inherent feature of a tangible asset. Although the view is more ephemeral than bricks and mortar, it is part of the assessed value of the property for tax purposes. Location is another such element of value. "Location is the time-distance relationships, or linkages, between a property or neighborhood and all possible origins and destinations of residents coming to or going from the property or neighborhood." *The Appraisal of Real Estate* 44 (Appraisal Institute 10th ed.1992). In other words, the augmentation in value results from property and market components, however incorporeal, that are not separately quantifiable as tax-exempt intangibles.

¶ 37 The physical and functional integration that allows WilTel's wires, cables, and transmission facilities to operate as a unit is analogous to real property location as a time-distance relationship, or linkage, al-

though it deals with origins and destinations of information rather than residents. This location factor is part of the value of the property itself and can neither exist nor be valued separately.

¶ 38 The Counties agree with the Commission's concept of enhanced value, but interpret it to include "nonproperty" intangibles. In their brief to this court, the Counties arrive at a taxable unit value of $2,423,000,-000 by adding to WilTel's cost estimate of $817,000,000, WilTel's proposed values for "assembled work force," "customer relations," and "goodwill and other intangibles." We eschew this approach in light of the specific exclusion of "goodwill and other intangibles" from taxable property under Utah Code Ann. § 59–2–102(19) as discussed above.

¶ 39 WilTel argues that under the principle of substitution, simple replacement cost sets an upper limit on value because a purchaser would not pay more for an asset than the amount for which it could be built or bought elsewhere. The petitioner in *Salt Lake City Southern Railroad* made a similar argument, contending that "instead of using the income approach to valuation, the Division should have added together the separate value of its property items as reflected by its own balance sheets." 987 P.2d at 598. We choose to follow the Commission's appraisal, noting: "In using the income approach of assessment, the Division attempted to capture the fair market value of the Company's property operating together as a single unit." *Id.* at 599.

¶ 40 Likewise, in the instant case, fair market value reflects the benefit stream created by unitary operation of tangible property. If the legislature had desired to limit assessed value to the materials and installation costs of tangible assets, it could easily have done so. Since it did not do so, we conclude that the statutory and constitutional fair market value requirements recognize some element of value that is not attributable to either intangibles or simple cost and that this enhanced value is taxable.

¶ 41 Therefore we uphold the Commission's ruling that it is not required to assess WilTel's property solely on the basis of cost.

*B. Valuation Methodology*

¶ 42 The Commission's amended final decision remanded the case to the parties with instructions to calculate yield capitalization value minus growth, to time-adjust the cost approach, and weigh each result 50% in the final appraisal. WilTel argues that this approach is imprecise and does not effectively exclude intangibles.

¶ 43 However, the Commission rejected the use of direct capitalization and the stock and debt method "because of the tendency each has to impound intangibles at higher levels." Both yield capitalization and direct capitalization are commonly used, often in combination with cost and market evaluations, to estimate the market value of commercial property. *See Salt Lake City Southern R.R.*, 987 P.2d at 598. In WilTel's case, the Commission employed the cost indicator from the Division's appraisal and adjusted it using a U.S. Department of Commerce inflation measure. The Commission then applied yield capitalization, which "is a method used to convert future benefits into present value by discounting each future benefit at an appropriate yield rate." *The Appraisal of Real Estate, supra* ¶ 42, at 420 (emphasis omitted).

¶ 44 WilTel and the Counties disagree for different reasons with the assessment method that the Commission selected. However, before arriving at its present method, the Commission sought input from the parties. The Commission's decision on the motion for partial summary judgment directed WilTel and the Division to calculate and remove the value of intangibles. Following the decision on the motion, the Division submitted a WilTel system value of $1,375,000,000 with a Utah share of $37,249,110. WilTel calculated the system value at $817,000,000 with a Utah allocation value of $15,704,000, while the Counties requested a Utah assessed value of $66,286,894, based on a system value of $2,352,293,100. It was only after the parties proved the impracticality of determining and deducting the value of intangibles, category by category, that the Commission stepped in with the cost/yield capitalization method.

¶ 45 WilTel and the Counties complain that the Commission has selected a methodology that neither of them proposed. The Commission was not obligated to adopt either of the proposed methodologies. Article XIII, section 11 of the Utah Constitution provides: "The State Tax Commission shall administer and supervise the tax laws of the State." Section 11 also gives the Commission powers of original assessment as provided by the legislature and power to "equalize the assessment and valuation of property within the counties." "State appraisers, acting under the general direction of the State Tax Commission or a Commissioner, have considerable discretion in determining which method should be utilized in assessing a particular property and the weight to be given to each indicator of value." *Rio Algom*, 681 P.2d at 189.

¶ 46 WilTel and the Counties also contend that the Commission's method was without an evidentiary basis. The Commission counters that it relied on the affidavit of Charles Peterson, the manager of the Division's utilities valuation section, to calculate WilTel's final assessed value. Mr. Peterson's affidavit, which was made under oath and circulated to the parties, details the Division's appraisal method and calculations. Neither WilTel nor the Counties objected to or rebutted Mr. Peterson's affidavit. We add that the substantial documentation of unitary tax appraisal practice contained in the record also bolsters the evidentiary basis for the Commission's methodology.

¶ 47 Moreover, neither WilTel nor the Counties have offered a workable alternative assessment methodology. WilTel argues for cost analysis alone, which ignores fair market value. The Counties erroneously subject intangibles to the privilege tax and undervalue tax-exempt intangibles. As we noted in *Salt Lake City Southern Railroad*, the "unsupported assertion that a different methodology should have been used does not constitute a basis for reversal." 987 P.2d at 599. In that case, we upheld the Commission's determination that "the Division's use of the income approach of appraisal was proper and that the resulting valuation did not unlawfully include the value of intangible property." *Id.*

at 596. In the instant case, the Commission's equal weighting of time-adjusted cost and yield capitalization removed over $1,400,000,000 of intangible value from the original $2,500,000,000 fair market value established by the sale price. Therefore, we hold that the Commission's combination of the yield capitalization value with the cost assessment of the Division sufficiently captures the unitary value of the property while excluding intangibles.

### C. Allocation Percentage Factor

¶ 48 Finally, WilTel challenges the Commission's use of a gross book value (cost) allocation percentage of 2.83% rather than a net book value (cost minus depreciation) of 1.9222%. The purpose of the allocation percentage is to determine Utah's taxable share of WilTel's system value. We need only determine which allocation basis most states use, since uniformity among states would foster fairness to each. WilTel hypothetically contrasts the present value of new and older assets with identical original costs in two different states and argues for net book value "because assets depreciate." However, WilTel cites no specific data indicating that its assets are old in Utah and new elsewhere or the converse, and does not show, or even allege, that the majority of states employ net book value. To the contrary, according to the record testimony of Michael Goodwin, a multi-state certified appraiser, "the Division's method, [gross book value] is used by most appraisers in most states." Expert testimony additionally cautioned that the use of net book value can give rise to negative numbers in some locations, making a rational allocation impossible. WilTel neither contests nor offers evidence against either of these statements. Instead WilTel argues, without supporting evidence, that use of gross book value is "arbitrary" and "unconstitutional" on the basis of the bald statement that it "allocates more value to Utah than is Utah's fair share." WilTel has provided no basis for the use of net book value in the allocation calculation. Consequently, we affirm the Commission's use of gross book value in its allocation calculations.

¶ 49 In its final order, the Commission instructed the Division and WilTel to calculate the value of WilTel's taxable Utah prop-

erty on the basis of equal weighting of time-adjusted cost and yield capitalization. The Commission ruled in favor of the Division's determination of value and set the system value of WilTel's property at $1,079,700,000. The Commission applied a Utah allocation percentage of 2.83%, yielding a Utah allocated value of $30,555,790. We find no error in the Commission's determination.

¶ 50 Affirmed.

¶ 51 Associate Chief Justice DURHAM, Justice ZIMMERMAN, Justice RUSSON, and Judge JACKSON concur in Chief Justice HOWE's opinion.

¶ 52 Having disqualified himself, Justice STEWART does not participate herein; Court of Appeals Judge NORMAN JACKSON sat.