2011 UT 28

**T–MOBILE USA, INC., Plaintiff and Appellee,**

v.

**UTAH STATE TAX COMMISSION, Defendant and Appellant,**

and

Beaver County, Box Elder County, Cache County, Davis County, Iron County, Juab County, Millard County, Morgan County, Salt Lake County, Summit County, Tooele County, Utah County, Wasatch County, Washington County, and Weber County, Affected Parties in Interest and Appellees.

Nos. 20090298, 20090308.

Supreme Court of Utah.

June 3, 2011.

Mark K. Buchi, Steven P. Young, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Laron Lind, Asst. Att'y Gen., Salt Lake City, for defendant.

David W. Scofield, Thomas W. Peters, Salt Lake City, for affected parties in interest and appellees.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 The Utah State Tax Commission (the "Commission") assessed T–Mobile USA, Inc.'s ("T–Mobile") taxable Utah property for the 2003 tax year. T–Mobile sought a de novo review of the Commission's assessment in the district court, sitting as a tax court, pursuant to Utah Code sections 59–1–601 and 602. Several Utah counties[1] (the "Counties") now appeal the tax court's final decision. The Counties seek review of the tax court's decision on four issues: (1) whether the tax court employed the correct standard of review and standard of proof, (2) whether the tax court erred in excluding T–Mobile's accounting goodwill from its taxable property, (3) whether the tax court erred in admitting the testimony of T–Mobile's expert witness, and (4) whether the tax court erred in its valuation of T–Mobile's taxable property.

¶ 2 We conclude that the tax court correctly reviewed the Commission's decision by a trial de novo and correctly required that the parties prove the value of T–Mobile's taxable property by a preponderance of the evidence. We also conclude that the tax court did not err when it excluded T–Mobile's accounting goodwill from taxation or when it admitted

the testimony of T–Mobile's expert witness, and that it did not err in its final valuation of T–Mobile's taxable property. We therefore affirm the decision of the tax court.

## BACKGROUND

¶ 3 On May 1, 2003, the Utah State Tax Commission's Property Tax Division (the "Division") assessed the value of T–Mobile's taxable Utah property at $124,577,850. T–Mobile and the Counties petitioned the Commission for a revaluation of the property pursuant to Utah Code section 59–2–1007(1)(a). The Commission held a formal hearing and reassessed T–Mobile's property at $117,850,000. The Commission's assessment was based on a historic cost approach[2] valuation.

¶ 4 The Counties appealed the Commission's decision to this court ("administrative appeal") pursuant to Utah Code section 59–1–602(1). Concurrently, T–Mobile exercised its option to appeal the Commission's decision for de novo review in the district court, acting as a tax court, pursuant to Utah Code section 59–1–602(1)(a). The administrative appeal to this court was stayed pending a final resolution of the appeal to the tax court. The tax court issued its final order on March 11, 2009. Subsequently, in *Beaver County v. Utah State Tax Commission*, we dismissed the Counties' administrative appeal pursuant to rule 15 of the Utah Rules of Appellate Procedure. 2010 UT 50, ¶ 15, 254 P.3d 158.

¶ 5 During the tax court proceeding, the Counties filed a motion in limine to exclude T–Mobile's expert, J. Phillip Cook, under rule 702 of the Utah Rules of Evidence. The Counties argued that Mr. Cook's testimony was inadmissible because he was not qualified to conduct unitary appraisals[3] and because he employed the wrong unit in his valuation of T–Mobile's Utah taxable proper-

---

1. These counties include Beaver, Box Elder, Cache, Davis, Iron, Juab, Millard, Morgan, Salt Lake, Summit, Tooele, Utah, Wasatch, Washington, and Weber.

2. "The cost approach determines property value based on original cost less depreciation." *Salt Lake City S. R.R. Co. v. Utah State Tax Comm'n*, 1999 UT 90, ¶ 14, 987 P.2d 594.

3. A unitary appraisal involves the appraisal of property that operates as a unit across county or state lines. In determining the value of property for tax purposes, the value of the property is first calculated as a unit and then apportioned by county or state. *See Beaver Cnty. v. WilTel, Inc.*, 2000 UT 29, ¶¶ 17, 35, 995 P.2d 602.

ty. Specifically, the Counties took issue with Mr. Cook's "Utah only unit" valuation, arguing that it applied the wrong geographical unit to appraise T–Mobile's property. The Counties argued that his allegedly inappropriate choice of appraisal unit showed that Mr. Cook was not experienced in unitary appraisals. The tax court reserved ruling on the Counties' motion until after hearing all the evidence. At the close of the evidence, the tax court denied the Counties' motion in limine. The court determined that while Mr. Cook chose an improper unit for his "Utah only unit" valuation, Mr. Cook presented other valuations employing the correct unit of appraisal. Consequently, the court did not use the "Utah only unit" valuation in its final assessment but instead relied on Mr. Cook's historic cost valuation.

¶ 6 In determining the fair market value of T–Mobile's taxable property, the tax court considered the appraisals presented by the experts at trial. The tax court concluded, however, that most of the appraisals were flawed. First, the tax court found that the discounted cash flow analysis performed by the Counties' expert appraiser, Brent Eyre, used capital expenditures that exceeded depreciation except for the terminal year, which was inconsistent with rule R884–24P–62 of the Utah Administrative Code. Second, the tax court found that the Commission's pro rata allocation of T–Mobile's accounting goodwill to its valuation was not based on any standard valuation approach and was erroneous because goodwill is intangible property that is exempt from tax under Utah Code section 59–2–1101 and the Utah Constitution.[4] Third, the tax court determined that Mr. Cook's "Utah only unit" appraisal was erroneous because it did not employ the correct unit of valuation.

¶ 7 The tax court concluded that there were only two appraisals in evidence that were not erroneous—Mr. Cook's historic cost valuation and Mr. Eyre's reworking of the Commission's cost approach to exclude goodwill. The tax court therefore relied on these two appraisals in its valuation of T–

Mobile's property. Specifically, it averaged these appraisals to value T–Mobile's taxable Utah property at $74,750,000. In so doing, the tax court gave no deference to any prior administrative assessment and required that the parties prove the correct assessment by a preponderance of the evidence.

¶ 8 The Counties and the Commission now appeal the tax court's valuation of T–Mobile's taxable Utah property. Specifically, the Counties take issue with the tax court's valuation because they argue that it was based on inadmissible evidence and erroneously excludes the value of goodwill. Additionally, the Counties and the Commission argue that the tax court's decision is in error because it did not give proper deference to the Division's and/or the Commission's prior assessments. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 9 When reviewing a district court's decision, "[w]e review the district court's factual findings for clear error and review its legal conclusions for correctness." *Houskeeper v. State*, 2008 UT 78, ¶ 18, 197 P.3d 636. The interpretation of a statute is a question of law, which we review for correctness. *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 10, 227 P.3d 256.

## ANALYSIS

¶ 10 The parties have raised a number of procedural and substantive issues, each of which we will discuss separately. First, we address the tax court's application of a de novo standard of review and a preponderance of the evidence burden of proof in reviewing the Commission's assessment of T–Mobile's Utah property. Second, we review the correctness of the tax court's final valuation by addressing whether the tax court correctly designated T–Mobile's accounting goodwill as intangible property, thereby excluding it from the final valuation. Third, we determine whether the tax court abused its discre-

---

4. The Commission based its valuation on information reported by T–Mobile on its Form 10–K. From the 10–K information, the Commission added the net book value of the total plant in service, construction work in progress at cost, and a pro rata portion of goodwill to determine the cost of the system-wide property.

tion when it admitted T–Mobile's expert witness testimony. Finally, we address whether it was clearly erroneous for the tax court to rely on its own valuation methodology in arriving at a final value for T–Mobile's taxable Utah property.

## I. THE TAX COURT CORRECTLY CONDUCTED A TRIAL DE NOVO AND CORRECTLY REQUIRED PROOF OF VALUE BY A PREPONDERANCE OF THE EVIDENCE

¶ 11 The Commission and the Counties argue that the tax court should have applied a different standard of review and burden of proof in its review of the Commission's assessment of T–Mobile's taxable Utah property. The Commission argues that the tax court should give deference, or a presumption of correctness, to the Commission's assessment and that the appealing party must, by a preponderance of the evidence, prove a "substantial error" in that assessment. The Counties alternatively argue that the tax court should give deference, or a presumption of correctness, to the original assessment by the Division and that such assessment may not be overturned absent substantial error. Finally, T–Mobile argues that the tax court was correct in conducting a de novo proceeding where no deference was given to any prior assessment and in requiring proof by a preponderance of the evidence that T–Mobile's proposed property value is the correct assessment value. We agree with T–Mobile.

### A. Utah Code Section 59–1–601 Requires a Trial De Novo With No Deference to Previous Commission Decisions

■ ¶ 12 In 1998, the Utah Constitution was amended to provide the Legislature with authority to grant Article VIII courts jurisdiction to "adjudicate, review, reconsider, or redetermine any matter decided by the State Tax Commission relating to revenue and tax-

ation." UTAH CONST. art. XIII, § 6, cl. 4. The Legislature acted on this authority and reinstated Utah Code section 59–1–601,[5] which states that "the district court shall have jurisdiction to review by trial de novo all decisions issued by the [C]ommission ... resulting from formal adjudicative proceedings." UTAH CODE ANN. § 59–1–601(1). (2008). The Counties and the Commission argue that the district court, acting as a tax court pursuant to this section, must still afford some level of deference to either the Division's original assessment or to the Commission's assessment. We disagree.

■ ¶ 13 "Under applicable rules of statutory construction, 'we look first to the statute's plain language to determine its meaning.'" *Heber Light & Power Co. v. Utah Pub. Serv. Comm'n*, 2010 UT 27, ¶ 19, 231 P.3d 1203 (quoting *Sill v. Hart*, 2007 UT 45, ¶ 7, 162 P.3d 1099). "We also interpret [the statute's] provisions in harmony with other ... statutes under the same and related chapters." *Id.* (alteration in original) (internal quotation marks omitted). The Legislature specifically directed in section 59–1–601 that a tax court shall have jurisdiction to review any formal adjudicative proceedings conducted by the Commission and shall do so by conducting a de novo proceeding. A de novo proceeding is defined in the statute as "an original, independent proceeding, and does not mean a trial de novo on the record." UTAH CODE ANN. § 59–1–601(2). We have previously defined a de novo proceeding as "anew, afresh, or a complete retrial" in which "the case is tried in the district court as if it originated there." *Bernat v. Allphin*, 2005 UT 1, ¶¶ 30–31, 106 P.3d 707 (internal quotation marks omitted). Thus, the plain statutory language indicates the legislative intent was for the tax court to make a new and independent assessment of property value without relying on or deferring to previous Commission assessments. This conclusion is further bolstered by the constitutional lan-

---

5. In *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n,* we held that section 59–1–601 was unconstitutional because it went "well beyond the legislature's power to prescribe limitations on the Commission's ability to 'adjust and equalize the valuation and assessment of property among the several counties.'" 953 P.2d 435,

442–43 (Utah 1997) (quoting UTAH CONST art. XIII, § 11 (repealed 2002)). After the constitutional amendment was passed authorizing the Legislature to grant jurisdiction to district courts to review Commission decisions, the section was reinstated. 1998 Utah Laws 326.

guage that gives article VIII courts the ability to "adjudicate, review, reconsider, or redetermine any matter decided by the State Tax Commission relating to revenue and taxation." UTAH CONST. art. XIII, § 6, cl. 4. The terms "reconsider" and "redetermine" inherently require that the tax court make an independent decision without deference to a previous Commission assessment and without restriction to the record before the tax court.

■ ¶ 14 This standard of review is a departure from traditional review in administrative cases. In 1993 the Legislature amended section 59–1–601 to allow the tax court to review a Commission's decision by a trial de novo. 1993 Utah Laws 248. Before the enactment of section 59–1–601, the standard of review applicable to a Commission decision mirrored the standard of review applied in traditional administrative review cases. *See Evans & Sutherland Computer Corp.*, 953 P.2d at 437. In those cases, jurisdiction to review a formal adjudicative proceeding was limited to this court or to the court of appeals. *See* UTAH CODE ANN. § 63G–4–403(1). Additionally, in reviewing final agency decisions, an "appellate court [could] grant relief only if . . . it determine[d] that [the] person seeking judicial review ha[d] been substantially prejudiced." *Id.* § 63G–4–403(4); *see also Beaver Cnty. v. WilTel, Inc.*, 2000 UT 29, ¶ 16, 995 P.2d 602 (requiring the petitioner to show both "substantial error or impropriety in the [Commission's] assessment" and a "sound evidentiary basis upon which the Commission could adopt a lower valuation" (internal quotation marks omitted)). Under such a regime, appellate courts were required to "grant the [C]ommission deference concerning its written findings of fact, applying a substantial evidence standard on review; and . . . grant the [C]ommission no deference concerning its conclusions of law, applying a correction of error standard." UTAH CODE ANN. § 59–1–610(1)(a)–(b). In other words, under traditional administrative review, a petitioner must show substantial prejudice to overcome the deference afforded to the Commission and justify overturning its decision.

¶ 15 With the reinstatement of section 59–1–601, the Utah Code now creates two potential avenues of review for a petitioner. One avenue is an appeal to the tax court under section 59–1–601, where a petitioner is entitled to a de novo proceeding to determine property value in which no deference is given to any previous Commission decision. *Id.* § 59–1–601. The other avenue is an appeal to an appellate court through the traditional administrative review process, where deference is given to the Commission's findings of fact and substantial prejudice must be shown to overturn the Commission's decision. *See id.* §§ 59–1–610(1), 63G–4–403(1), (4). In this case, T–Mobile chose the first avenue. As a result, the tax court correctly conducted a de novo proceeding where it afforded no deference or presumption of correctness to any previous Commission assessment.

### B. The Tax Court Correctly Required Proof by a Preponderance of the Evidence

■ ¶ 16 In a de novo proceeding in the tax court pursuant to Utah Code section 59–1–601, "a preponderance of the evidence shall suffice to sustain the burden of proof." *Id.* § 59–1–604. The Counties and the Commission argue that T–Mobile should have been required to prove by a preponderance of the evidence that there was substantial error in the Commission's assessment and that there was a sound basis for adopting a lower valuation. We disagree.

¶ 17 The Counties and the Commission rely on *Utah Railway Company v. Utah State Tax Commission* for their argument that T–Mobile "must meet its twofold burden of demonstrating substantial error or impropriety in the [original] assessment, and providing a sound evidentiary basis upon which the Commission could adopt a lower valuation." 2000 UT 49, ¶ 10, 5 P.3d 652 (alteration in original) (internal quotation marks omitted). This reliance is misplaced. In *Utah Railway Co.*, the burden was premised on the idea that a presumption of correctness attached to the original assessment as required by Utah Code section 59–1–610(1). *Id.* ¶ 6. But when a party chooses to bring a case to the tax court pursuant to Utah Code

section 59–1–601, no presumption of correctness attaches to the Commission's assessment. Indeed, the party's only burden is to show by a preponderance of the evidence that its proposed valuation is more accurate than any other value. *See Harken Sw. Corp. v. Bd. of Oil, Gas & Mining,* 920 P.2d 1176, 1182 (Utah 1996) (defining preponderance of the evidence as "more likely than not"); *Alvarado v. Tucker,* 2 Utah 2d 16, 268 P.2d 986, 988 (1954) (defining preponderance of the evidence as the "greater weight of the evidence" in favor of the prevailing party). Contrary to the Counties' and the Commission's arguments, the statute does not require any showing of substantial error.

¶ 18 In this case, the tax court was correct in refusing to give any deference to prior Commission assessments. T–Mobile's burden in the tax court was simply to demonstrate that "the greater weight of the evidence" supported the value it proposed.

## II. THE TAX COURT CORRECTLY EXCLUDED T–MOBILE'S ACCOUNTING GOODWILL FROM PROPERTY TAX

¶ 19 We next address whether the tax court erred when it excluded the value of T–Mobile's accounting goodwill from its taxable Utah property. The tax court held that T–Mobile's accounting goodwill was not taxable because it constituted intangible property that is exempt from property tax under the 1998 Utah Property Tax Act (the "1998 Act"), Utah Code sections § 59–2–101 to 1372,[6] and article XIII, section 2, clause 5, of the Utah Constitution. The Counties argue that the tax court erred because T–Mobile's accounting goodwill is not intangible property but rather taxable tangible property. We are not persuaded. While we agree that accounting goodwill is not exempt from property tax under the 1998 Act, the Utah Constitution prohibits taxing goodwill as property. And we note that our conclusion in this regard is consistent with the Legislature's 2006 amendment to the Utah Property Tax Act, which includes goodwill within the definition

of "intangible property" that is exempt from property tax. *See* UTAH CODE ANN. § 59–2–102(20)(c) (Supp.2010); *see also id.* § 59–2–102(16)(a) (defining "goodwill" to include "acquired goodwill that is reported as goodwill on the books and records: (A) of a taxpayer; and (B) that are maintained for financial reporting purposes").

### A. Goodwill Is Not Exempt from Taxation Under the 1998 Act

■ ¶ 20 The Utah Constitution requires that all nonexempt tangible property within the state be taxed. *See* UTAH CONST. art. XIII, § 2, cl. 1. Consistent with this provision, the 1998 Act mandates that "[a]ll tangible taxable property located within the state" be taxed, but exempts intangible property from taxation. *See* UTAH CODE ANN. §§ 59–2–103(1), –1101(2)(g) (2000). Thus, the first question we must address is whether accounting goodwill is tangible or intangible property under the 1998 Act.

■ ¶ 21 According to well-accepted canons of statutory construction, we begin our interpretation of a statute with an analysis of its plain language. *R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n,* 2008 UT 80, ¶ 23, 199 P.3d 917. If the plain language is unambiguous, we do not look to other interpretive tools. *Id.* But "if the language is ambiguous, the court may look beyond the statute to legislative history ... to ascertain the statute's intent." *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints,* 2007 UT 42, ¶ 47, 164 P.3d 384. We therefore begin with the plain language of the statute.

¶ 22 The 1998 Act defines intangible property but does not define tangible property. It defines intangible property as "property that is capable of private ownership separate from tangible property; and ... includes (i) moneys; (ii) credits; (iii) bonds; (iv) stocks; (v) representative property; (vi) franchises; (vii) licenses; (viii) trade names; (ix) copyrights; and (x) patents." UTAH CODE ANN. § 59–2–102(17) (2000).

---

6. In 2006, the Utah Property Tax Act was amended to include goodwill in its definition of intangible property. 2006 Utah Laws 249 (codified as amended at UTAH CODE ANN. § 59–2–102(20)(c) (Supp.2010)). We therefore cite to the version in effect at the time that the events giving rise to this appeal occurred.

¶ 23 To fit within the statutory definition of "intangible property," accounting goodwill must be "capable of private ownership separate from tangible property." *Id.* But accounting goodwill does not fit within this definition. T–Mobile's accounting goodwill was booked according to the rules set forth by the Financial Accounting Standards Board (the "FASB").[7] According to the FASB, accounting goodwill is "[t]he excess of the cost of an acquired entity over the net of the amounts of the assets acquired and liabilities assumed." BUSINESS COMBINATIONS, Statement of Fin. Accounting Standards No. 141, para. 43, at 18 (Fin. Accounting Standards Bd. 2001) [hereinafter FAS 141].[8] Accounting goodwill is required to be booked only when a company is acquired.[9] *See id.*

¶ 24 The definition of accounting goodwill is complex. According to the FASB, accounting goodwill is comprised of six components: (1) "[t]he excess of the fair values over the book values of the acquired entity's net assets at the date of acquisition"; (2) "[t]he fair values of other net assets that [have] not been recognized by the acquired entity at the date of acquisition";[10] (3) "[t]he fair value of the 'going-concern' element of the acquired entity's existing business";[11] (4) "[t]he fair value of the expected synergies and other benefits from combining the acquiring entity's and acquired entity's net assets and businesses"; (5) "[o]vervaluation of the consideration paid by the acquiring entity stemming from errors in valuing the consideration tendered"; and (6) "[o]verpayment or underpayment by the acquiring entity." *Id.* paras. B102, at 57–58.

¶ 25 Despite the complexity of this definition, the FASB makes clear that accounting goodwill is not *an exchangeable asset that is separate from other assets of the entity. See id.* paras. B118–19, at 61. Accordingly, accounting goodwill cannot meet the legislative definition of intangible property because by its very nature it cannot be sold apart from either the tangible or intangible property of the company.

¶ 26 Other canons of statutory construction also support the conclusion that the Legislature did not intend to exempt goodwill from taxation when passing the 1998 Act.[12] The first is that of *ejusdum generis*, which provides that a term or phrase is "understood as restricted to include things of the same kind, class, character, or nature as those specifical-

---

7. Because both the Counties and T–Mobile refer to the FASB definition of goodwill as accounting goodwill, we similarly refer to the FASB definition of goodwill as accounting goodwill.

8. Accounting goodwill = purchase price-(assets acquired + liabilities assumed). FAS 141, *supra,* para. 43, at 18. An intangible asset can be recognized apart from goodwill if (1) "control over the future economic benefits of the asset results from contractual or other legal rights" or (2) it "is capable of being separated or divided and sold, transferred, licensed, rented, or exchanged." *Id.* para. B152, at 68.

9. On May 31, 2001, Deutsche Telekom AG acquired the common stock of VoiceStream and transferred the stock to its subsidiary T–Mobile. The accounting goodwill at issue in this case was booked as a result of this acquisition.

10. This value may include a company's customer base, customer service capabilities, presence in geographic markets or locations, nonunion status, strong labor relations, ongoing training programs, and ongoing recruitment programs. *Id.* para. B165, at 71.

11. "The going-concern element represents the ability of the established business to earn a high-er rate of return on an assembled collection of net assets than would be expected if those net assets had to be acquired separately. That value stems from the synergies of the net assets of the business. . . ." *Id.* para. B102, at 57–58.

12. We pause to note that the FASB definition of accounting goodwill is similar to the generally understood definition of "goodwill." Black's Law Dictionary defines "goodwill" as "a business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp[ecially] for purchase; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets." BLACK'S LAW DICTIONARY 715 (8th ed. 2004). This definition recognizes that goodwill does not have any value in itself but derives its value from other assets. Similarly, accounting goodwill has no value in itself but derives its value from other assets. As per the FASB, accounting goodwill reflects a business's customer base, customer service capabilities, and other intangible assets that are included in the purchase price of a company; it also reflects the synergies created by the net assets working together. Because the definition of accounting goodwill and the general definition of goodwill are similar, we refer to these terms interchangeably throughout this opinion.

ly enumerated." *Ball v. Pub. Serv. Comm'n,* 2007 UT 79, ¶ 54, 175 P.3d 545 (internal quotation marks omitted). Utah Code section 59–2–102 provides a nonexclusive list of categories of intangibles that include "(i) moneys; (ii) credits; (iii) bonds; (iv) stocks; (v) representative property; (vi) franchises; (vii) licenses; (viii) trade names; (ix) copyrights; and (x) patents." UTAH CODE ANN. § 59–2–102(17)(b) (2000). All of these items are capable of being divided from the acquired entity and sold, transferred, licensed, rented, or exchanged. But goodwill is not capable of being separated and sold apart from the entity, and therefore it is not of the same character as the intangible properties enumerated in this section.

 ¶ 27 Second, we find it significant that the Legislature removed the term "goodwill" from the list of property exempt from property tax when it passed the 1998 Act. As part of our plain language analysis, we place significance on the removal of a term from a piece of legislation. *See, e.g., Sindt v. Ret. Bd.,* 2007 UT 16, ¶ 13, 157 P.3d 797 (noting that the legislature's removal of the term "constable" was indicative of its intent to remove "constable" from the definition of public officer); *see also* 1A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 22.30, at 368 (6th ed. 2002) ("An amendment of an unambiguous statute indicates an intent to change the law."). Prior to 1998, "intangible property" was not defined. But the term "property" was defined to exclude "goodwill ... and other intangibles." UTAH CODE ANN. § 59–2–102(20) (Supp.1997). The 1998 amendment to this section changed the definition of property and added a definition for "intangible property." Specifically, it defined "property" to exclude "intangible property as defined in this section." *Id.* § 59–2–102(24)(b) (2000). Furthermore, it defined "intangible property" as "property that is capable of private ownership separate from tangible property" and listed examples of categories of intangible property falling within the general definition. *See id.* § 59–2–102(17). Goodwill was excluded from this list of intangible property. Because the Legislature was aware of goodwill at the time

that this section was amended, its decision to not specifically enumerate goodwill as intangible property indicates its intent to exclude goodwill from the definition of intangible property.

 ¶ 28 Our position that the Legislature did not intend to include goodwill is also supported by the Legislature's 2006 amendment to the definition of "intangible property." *See* 2006 Utah Laws 249. In 2006, the Legislature amended the definition of "intangible property" to include goodwill. *Id.* (codified as amended at UTAH CODE ANN. § 59–2–102(20)(c) (Supp.2010)). The 2006 amendment provides that

Intangible property means:

(a) property that is capable of private ownership separate from tangible property, including:

 (i) money;

 (ii) credits;

 (iii) bonds;

 (iv) stocks;

 (v) representative property;

 (vi) franchises;

 (vii) licenses;

 (viii) trade names;

 (ix) copyrights; and

 (x) patents;

(b) a low-income housing tax credit;

(c) goodwill

. . . .

*Id.* § 59–2–102(20). When the Legislature amended the definition of intangible property, it did not include goodwill as part of the list of intangible property that is considered "capable of private ownership separate from tangible property." *Id.* Rather, the Legislature included goodwill as a separate category of intangible property. In so doing, the Legislature suggested that goodwill is not "capable of private ownership separate from tangible property." We therefore conclude that goodwill is not intangible property as that term is defined in the 1998 Act. Thus, goodwill is not exempt from property tax under the 1998 Act.[13]

13. Although "we will, whenever possible, interpret a statute to avoid constitutional infirmities,"

*B. Goodwill Is Not Taxable Under Article XIII, Section 2, Clause 5 of the Utah Constitution*

¶ 29 Having concluded that T–Mobile's accounting goodwill is taxable as property under the 1998 Act, we must determine whether the 1998 Act is consistent with the Utah Constitution.[14] Article XIII, section 2, clause 5 of the Utah Constitution provides that "The Legislature may by statute determine the manner and extent of taxing or exempting intangible property.... If any intangible property is taxed under the property tax, the income from that property may not also be taxed." UTAH CONST. art. XIII, § 2, cl. 5. The Legislature has chosen to exempt intangible property from taxation and instead to tax the income derived from such property. UTAH CODE ANN. § 59–7–101(31)(b) (2000) (" 'Utah taxable income' includes income from tangible or intangible property located or having situs in this state ...."); *see also Beaver Cnty. v. WilTel, Inc.*, 2000 UT 29, ¶ 33, 995 P.2d 602. Because the Legislature chose to tax the income from intangible property, it could not tax the intangible property itself. *See id.*, 2000 UT 29, ¶ 33, 995 P.2d 602. We must therefore determine whether goodwill is intangible property under the Utah Constitution and, if so, whether the Legislature elected to tax the income from such goodwill.

¶ 30 "In interpreting the state constitution, we look primarily to the language of the constitution itself...." *Grand Cnty. v. Emery Cnty.*, 2002 UT 57, ¶ 29, 52 P.3d 1148 (internal quotation marks omitted). "[O]ur Constitution ... should be interpreted and applied according to the plain import of [its] language as it would be understood by persons of ordinary intelligence and experience." *Salt Lake City v. Ohms*, 881 P.2d 844, 850 n. 14 (Utah 1994). "We need not inquire beyond the plain meaning of the [constitutional provision] unless we find it ambiguous." *Grand Cnty.*, 2002 UT 57, ¶ 29, 52 P.3d 1148 (alteration in original) (internal quotation marks omitted).

¶ 31 The meaning of "intangible property" is clear and unambiguous. As used in the law of taxation, the "generally accepted definition[ ] of intangible property," is property that " 'has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, copyrights, and franchises.' " *Salt Lake City S. R.R. Co. v. Utah State Tax Comm'n*, 1999 UT 90, ¶ 9, 987 P.2d 594 (quoting BLACK'S LAW DICTIONARY 809 (6th ed. 1990)).

¶ 32 Goodwill is consistent with this definition. As stated above, goodwill is generally defined as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business." BLACK'S LAW DICTIONARY 715 (8th ed. 2004). Goodwill does not have any "intrinsic and marketable value" in and of itself. Indeed, goodwill has no physical aspect but represents the value associated with, for example, a business's reputation and its relationship with its customers. We therefore conclude that goodwill constitutes intangible property.

¶ 33 We next examine whether the Legislature has elected to tax the income from such goodwill. Utah's corporate income tax "impose[s] upon each corporation ... a tax upon its Utah taxable income." UTAH CODE ANN. § 59–7–201 (2000). The corporate income tax defines "taxable income" to "include[ ] income from tangible or intangible property located or having situs in this state." *Id.* § 59–7–101(31)(b). Because goodwill is property and because Utah's corporate income tax imposes a tax on the income derived from all property, including both tangible and intangible property, the income derived from goodwill is already be-

"we will not interpret the language so that it results in an application that is unreasonably confused, inoperable, [or] in blatant contradiction of the express purpose of the statute." *I.M.L. v. State*, 2002 UT 110, ¶ 25, 61 P.3d 1038 (alteration in original) (internal quotation marks omitted). In light of the plain language of section 59–2–102(17), we conclude it would be un-

reasonable to determine that the Legislature intended to exempt goodwill from taxation.

14. As previously indicated, the Legislature has since amended the 1998 Act to exclude goodwill from property tax.

ing taxed.[15] *See WilTel*, 2000 UT 29, ¶ 34, 995 P.2d 602 ("[I]ntangible property is taxed on income and, therefore, ... has not escaped taxation."). As a result, it would be prohibited to levy a property tax on T-Mobile's goodwill.

¶ 34 The Counties argue against this conclusion, asserting that the plain language of article XIII, section 2, clause 5 supports their position that goodwill is taxable as property. Additionally, they argue that our decision in *WilTel* suggests that goodwill does not fall within the constitutional definition of intangible property. We are persuaded by neither argument.

¶ 35 The Counties argue that "[t]he literal language of the sentence structure" of article XIII, section 2, clause 5 of the Utah Constitution "contemplates that there is a property tax and so there may not also be an income tax." They read the clause to mean that T-Mobile may challenge only the constitutionality of the income tax as applied to intangible property and not the property tax. But such a reading is inconsistent with the purpose of article XIII, section 2, clause 5, which is to prevent double taxation of intangible property. *See WilTel*, 2000 UT 29, ¶¶ 33–34, 995 P.2d 602.[16] Article XIII, section 2 provides that the Legislature is free to choose whether to tax intangibles as property or the income from intangible property. The Legislature has made its choice and decided to tax the income from intangible property. It is therefore prohibited from taxing the intangible property itself.

¶ 36 The Counties maintain that goodwill cannot constitute intangible property under the Utah Constitution under our *WilTel* decision. 2000 UT 29, 995 P.2d 602. In *WilTel*, we determined that the value of a company's tangible property operating together as a unit constituted "enhanced value" that was properly taxable under the Utah Constitution because enhancement value is directly attributable to tangible property. *Id.* ¶¶ 35–39. We also held that a unitary method of assessment was an appropriate method to capture enhancement value. *Id.* ¶¶ 22, 36–40. We therefore upheld the Commission's decision to value WilTel's property using the unitary method of appraisal because "[a unitary] approach of assessment ... capture[s] the fair market value of the *Company's property operating together as a single unit.*" *Id.* ¶ 39 (emphasis added) (internal quotation marks omitted).

¶ 37 The appellees in *WilTel* agreed with our definition of enhancement value, "but interpret[ed] it to include 'non-property' intangibles" such as "'assembled workforce,' 'customer relations,' and 'goodwill.'" *Id.* ¶ 38. "We eschew[ed] this approach in light of the specific exclusion of 'goodwill and other intangibles' from taxable property under Utah Code Ann. § 59–2–102(19)...." *Id.* The Counties argue that because the Legislature removed the exemption for goodwill and other intangibles from the 1998 Act, goodwill is now taxable under *WilTel* as enhancement value. Specifically, they argue that accounting goodwill falls within the definition of tangible enhancement value because it captures the "synergy value" of the company's net assets working together as a unit. We are unpersuaded.

¶ 38 Accounting goodwill includes components other than a company's "synergy value." For instance, accounting goodwill includes a company's customer base, customer service capabilities, presence in geographic markets or locations, nonunion status, strong

---

15. FASB has defined accounting goodwill to include intangibles such as a company's customer base, customer service capabilities, and presence in geographic markets or locations. To the extent that a company has a strong customer base or customer service capabilities, it will earn more revenue and that revenue is taxable as income.

16. Although article XIII, section 2 was amended after our decision in *WilTel*, the amendment did not change this section's prohibition against double taxing intangible property. *Compare* UTAH

CONST. art. XIII, § 2, cl. 10 (amended 2003) ("Intangible property may be exempted from taxation as property or it may be taxed as property in such manner and to such extent as the Legislature may provide, but if taxed as property the income therefrom shall not also be taxed") *with id.* art. XIII, § 2, cl. 5 ("The Legislature may by statute determine the manner and extent of taxing or exempting intangible property.... If any intangible property is taxed under the property tax, the income from that property may not also be taxed.")

labor relations, ongoing training programs, and ongoing recruitment programs. FAS 141, *supra*, para. B165, at 71. This definition does not, as the counties suggest, indicate that 100 percent of T–Mobile's accounting goodwill represents the value of the company's assets working together as a whole. And even if 100 percent of T–Mobile's accounting goodwill constituted "synergy value," it does not follow that all of this value is directly attributable to T–Mobile's tangible property.

¶ 39 Intangible assets such as "synergy value"[17] and "customer base" are associated with the business being conducted on the property; they are not directly attributable to tangible property. *See Shubat v. Sutter Cnty. Assessment Appeals Bd. No. 1*, 13 Cal.App.4th 794, 17 Cal.Rptr.2d 1, 7 (1993) ("[I]ntangibles such as going concern value or franchise rights relate to the business being conducted on the real property. They relate to the real property only in their connection with the business using it."). And while assets associated with the business being conducted on the property, such as customer base and "going concern value," can enhance tangible property, it does not follow that these assets constitute enhancement value. *See id.* at 6. Rather, to the extent that accounting goodwill includes enhancement value attributable to T–Mobile's tangible property, that value is reflected in the value of the physical property itself and can be captured by a unitary method of appraisal. *See WilTel*, 2000 UT 29, ¶¶ 7, 36–41, 995 P.2d 602 (indicating that intangible value that is captured in a unitary appraisal is directly attributable to tangible property and is not required to be deducted from the appraisal); *see also Shubat*, 17 Cal.Rptr.2d at 7 ("Intangible values ... that cannot be separately taxed as property may be reflected in the valuation of taxable property." (alteration in original) (internal quotation marks omitted)).

¶ 40 In this case, the tax court noted that the value in T–Mobile's goodwill account may have contained enhancement value, but it refused to tax T–Mobile's goodwill account

directly. Rather, the tax court concluded, to the extent T–Mobile's goodwill account included enhancement value, that value would be captured through the valuation of the tangible property itself. The tax court correctly so concluded.

## III. THE TAX COURT DID NOT ERR WHEN IT ADMITTED T–MOBILE'S EXPERT WITNESS

¶ 41 We next examine the Counties' contention that the tax court did not fulfill its "gatekeeper" function under rule 702 of the Utah Rules of Evidence when it admitted the testimony of T–Mobile's expert witness, Mr. Cook. "Trial courts enjoy broad discretion in determining whether expert scientific evidence is admissible...." *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 16, 31 P.3d 557. As a result, we review admissibility decisions for abuse of discretion and " 'can properly find abuse only if ... no reasonable [person] would take the view adopted by the trial court.' " *Id.* (alterations in original) (quoting *State v. Brown*, 948 P.2d 337, 340 (Utah 1997)).

¶ 42 Rule 702 of the Utah Rules of Evidence sets forth a two-part test for determining whether expert testimony is admissible. First, "[r]ule 702(a) requires the court to consider whether expert testimony is necessary to assist the trier of fact and whether the proposed expert has the necessary 'knowledge, skill, experience, training, or education' to provide such assistance to the trier of fact." *Eskelson ex rel. v. Davis Hosp. & Med. Ctr.*, 2010 UT 15, ¶ 9, 2010 WL 841276, (quoting Utah R. Evid. 702(a)). Second, rule 702(b) requires that the specialized knowledge that forms the expert's testimony be reliable, based on sufficient facts, and be reliably applied to the facts. Utah R. Evid. 702(b).

### A. The Tax Court Did Not Abuse Its Discretion When It Determined That Mr. Cook Was Qualified as an Expert Under Rule 702(a)

¶ 43 The Counties argue that Mr. Cook's appraisal of T–Mobile's Utah proper-

---

17. The FASB notes that a component of goodwill comprises the "going-concern" element of the acquired entity's business. It notes that this value stems from the synergies of the acquired entity's assets working together as a whole. FAS 141, *supra*, para. B102, at 57–58.

ty should have been excluded under rule 702(a) because he was unqualified to conduct unitary appraisals. We disagree. Under rule 702(a), an expert must pass an initial qualification threshold. Only a witness "qualified as an expert by knowledge, skill, experience, training, or education" may testify. UTAH R. EVID. 702(a). The tax court did not abuse its discretion in finding that Mr. Cook fulfilled these requirements.

¶ 44 Mr. Cook has twenty-eight years of experience as a certified general appraiser in the state of Utah. Mr. Cook has taught courses on appraisal and has served on many professional committees, both as chairman and as a board member. Additionally, Mr. Cook has testified as an appraisal expert many times in court proceedings. Although Mr. Cook has performed only two other unitary appraisals, he has assisted on other unitary appraisals. These qualifications support the tax court's finding that Mr. Cook was qualified in unitary appraisals. We accordingly conclude that the tax court did not abuse its discretion in concluding Mr. Cook's testimony satisfied the requirements of rule 702(a).

B. *The Tax Court Did Not Abuse Its Discretion When It Determined That Mr. Cook's Testimony Was Reliable Under Rule 702(b)*

¶ 45 Rule 702(b) requires that the methods forming the basis for expert testimony be reliable, based on sufficient facts, and have been reliably applied to the facts of the case. UTAH R. EVID. 702(b). Rule 702(c) provides that the threshold showing of 702(b) has been met if the methods upon which an expert's specialized knowledge is based are "generally accepted by the relevant expert community." *Id.* 702(c).

¶ 46 The tax court did not abuse its discretion when it admitted Mr. Cook's "historic cost less depreciation" valuation because it is a "generally accepted" method of valuation in "the relevant expert community." *Id.* In fact, Utah Administrative Code rule 884–24P–62(4)(b) states that the cost approach is a preferred method to determine fair market value. And part (5)(a)(v) of this same rule states that historic cost less depre-

ciation is one of the preferred cost indicators of value for unitary appraisal. As historic cost is one of the preferred methods for appraisal, Mr. Cook's historic cost valuation is generally accepted in the expert community and thus meets the requirements of 702(b).

¶ 47 The Counties' argument that Mr. Cook's testimony should be excluded is based largely on the undisputed fact that Mr. Cook used a "Utah only unit" method of valuation in reaching some of his valuations. Even assuming the tax court erred when it admitted Mr. Cook's valuations that employed the "Utah only unit" method, it does not follow that the court also erred in admitting his historic cost valuation, which did not employ the "Utah only unit" method. Additionally, we find it significant that the case was tried to the tax court and not to a jury.

> [W]hen [a] trial is to a court, the rulings on evidence are not of such critical moment as when a trial is to a jury, because it is to be assumed that [the court] has and will use [its] superior knowledge as to the competency and the effect which should be given evidence.

*Super Tire Mkt., Inc. v. Rollins*, 18 Utah 2d 122, 417 P.2d 132, 136 (1966). We are confident that the tax court was able to correctly sort out any erroneous aspects of Mr. Cook's testimony. The tax court noted that Mr. Cook's "Utah only unit" valuation was erroneous, disregarded it, and instead relied on his historic cost valuation that did not use the "Utah only unit." Because a historic cost valuation is generally accepted in the appraisal community, we conclude that the tax court did not err in admitting Mr. Cook's appraisal.

¶ 48 The Counties also argue that the "record is devoid of any indication that the tax court even performed the rule 702 analysis." This is incorrect. In its Findings of Fact and Conclusions of Law and Final Decision, the tax court analyzed, as required by 702(a), Mr. Cook's qualifications as an appraiser. Additionally, as required by 702(b), the district court made findings as to the reliability of Mr. Cook's testimony. Specifically, it stated that much of the evidence that Mr. Cook

presented was unreliable because he did not select the proper unit. It therefore disregarded the valuations that employed the wrong unit. Additionally, in admitting Mr. Cook's cost valuation, the tax court recognized that it did not capture enhancement value. But it also found that the Counties' cost approach, excluding goodwill,[18] also failed to capture enhancement value. The tax court noted that because other unitary procedures were unreliable, the only reliable evidence of value was the Counties' cost valuation and T–Mobile's cost valuation. The Counties have failed to persuade us that this determination was an abuse of discretion.

## IV. THE TAX COURT'S VALUATION OF T–MOBILE'S TAXABLE PROPERTY WAS NOT CLEARLY ERRONEOUS

¶ 49 Having determined that the tax court did not err in admitting T–Mobile's expert testimony, we now analyze whether the tax court erred in its valuation of T–Mobile's taxable property. The choice of a valuation methodology and the resulting fair market value are questions of fact to be overturned only when clearly erroneous. *Salt Lake City S. R.R. Co. v. Utah State Tax Comm'n*, 1999 UT 90, ¶ 13, 987 P.2d 594; *Schmidt v. Utah State Tax Comm'n*, 1999 UT 48, ¶ 6, 980 P.2d 690.

¶ 50 The Counties argue that the tax court's valuation is clearly erroneous for two reasons. First, they argue that the tax court erred when it did not use a unitary method of appraisal. Second, they argue that the tax court erred when it did not give proper deference to the valuation of the Division. We address the Counties' arguments in turn.

¶ 51 First, the Counties argue that the tax court's valuation is clearly erroneous because it was not calculated using a unitary method of appraisal. We disagree. As previously discussed, the historic cost approach is one of the preferred methods of unitary appraisal. UTAH ADMIN. CODE r. 884–24P–62(5)(a)(v) (2010). Moreover, while we have

previously stated that the unitary appraisal method is the "most rational way to determine the value of an enterprise whose function relies upon cross-boundary connections," *WilTel*, 2000 UT 29, ¶ 21, 995 P.2d 602, this does not render the use of unitary appraisal for such properties mandatory. And the Utah Code does not require the use of the unitary method. Rather, the code simply provides that property shall be assessed by the Commission at 100 percent of fair market value. Requiring the tax court to use a specific valuation method ignores the reality that certain methodologies are not always accurate in every circumstance.

¶ 52 In this case, the tax court found that some of the unitary appraisals presented to it were erroneous. Specifically, it found that the Counties' valuations erroneously relied on "capital expenditures that greatly exceed depreciation" and included "all of T–Mobile's accounting goodwill as taxable" enhancement value. Moreover, it found that T–Mobile's unitary appraisal used the wrong unit. The tax court was therefore left without a reliable unitary appraisal other than the nationwide unit cost approach presented by both of the parties. Because we have endorsed the use of the cost approach to valuation, *see Salt Lake City S. R.R. Co.*, 1999 UT 90, ¶ 14, 987 P.2d 594, we conclude that the tax court did not err in relying on the parties' cost valuations.

¶ 53 The Counties also contend that the tax court erred in its valuation because it failed to give deference to the Division's original assessment. But as discussed in Part I, the tax court has broad authority in reviewing decisions of the Commission. Utah Code section 59–1–604 provides that a tax court can "affirm, reverse, modify, or remand any order of the [C]ommission, and shall grant other relief, invoke such other remedies, and issue such orders, in accordance with its decision, as appropriate." UTAH CODE ANN. § 59–1–604 (2008). Section 601 also provides that the tax court's review is a "trial de novo," which is defined as "an original, independent proceeding." *Id.* § 59–1–601(1)–(2).

---

**18.** The Counties submitted as evidence a "reworking of the Tax Commission's cost approach

to exclude goodwill."

These provisions give the tax court broad authority to devise its own remedy in a given case.

¶ 54 In this case, the tax court used its statutory authority to arrive at a fair market value based on averaging the Counties' cost appraisal and T–Mobile's cost appraisal. It was clearly within the scope of the tax court's authority to devise a valuation that differed from either the Division's original assessment or the Commission's valuation. Indeed, we have previously upheld valuations where the Commission averaged two or more valuations presented to it. *See, e.g., Utah Ass'n of Cntys. v. Tax Comm'n ex rel. Am. Tel. & Tel. Co.*, 895 P.2d 819, 823 (Utah 1995) (upholding the Commission's decision to "adopt a figure that fell somewhere between" the valuations presented by each of the parties); *Questar Pipeline Co. v. Utah State Tax Comm'n*, 850 P.2d 1175, 1179 (Utah 1993) (upholding Commission's decision that assigned relative weights to the various valuations presented to arrive at a valuation of Utah taxable property). Because the tax court has broad authority to devise a valuation that is different from the valuations of both the Commission and the Division, it did not err in arriving at its own valuation of T–Mobile's taxable property.

## CONCLUSION

¶ 55 We conclude that the tax court did not err when it reviewed the Commission's decision by a trial de novo or when it required the parties to prove the correct valuation of T–Mobile's taxable property by a preponderance of the evidence. In addition, we conclude the tax court correctly found that accounting goodwill is exempt from taxation under the Utah Constitution. The tax court did not abuse its discretion when it denied the Counties' motion in limine to exclude T–Mobile's expert witness, and we find no error in the tax court's choice of valuation methodology. We therefore affirm the decision of the tax court.

¶ 56 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Judge PULLAN concur in Justice PARRISH's opinion.

¶ 57 District Judge DEREK PULLAN sat.

¶ 58 Justice THOMAS R. LEE became a member of the Court on July 19, 2010, after oral argument in this matter, and accordingly did not participate.