*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2013 UT 2**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CALEB PROULX,
*Petitioner,*

*v.*

SALT LAKE CITY RECORDER; SALT LAKE CITY CORP.,
*Respondents.*

No. 20120521
Filed January 18, 2013

Original proceeding in this Court

Attorneys:

Caleb Proulx, pro se

Edwin P. Rutan II, J. Elizabeth Haws, Salt Lake City,
for respondents

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1      Caleb Proulx petitioned this court to issue an extraordinary writ compelling the Salt Lake City Recorder to place an initiative on the November 2012 ballot, and to declare that the power of popular initiative encompasses initiatives that are purely advisory. We issued an order denying the petition, and now explain our reasoning.

## BACKGROUND

¶2      In April of this year, a group calling itself Move to Amend Salt Lake submitted a petition (the Petition) to the Salt Lake County Clerk for certification under section 20A-7-506 of the Utah Code. That section governs the certification of initiative petitions for placement on local ballots. The Petition styled itself as a "Resolution of Support for a Constitutional Amendment to Declare that

Corporations Are Not People."[1]

¶3    The Clerk certified the signatures on the Petition and delivered it to the Salt Lake City Recorder in May. The Recorder in turn reported the Petition to the Salt Lake City Council in June. On June 5, the Salt Lake City Law Department issued a letter (the Legal Opinion) to the Mayor and the Council. The Legal Opinion expressed the view that "the proposed 'resolution' fails to constitute 'legislation,' or a 'local law' and therefore is not the proper subject of an initiative under the Utah Constitution and statutes." The Legal Opinion cited section 20A-7-102(1)(b) of the Utah Code, which speaks of the power of "Utah voters" to "initiate any desired *legislation*." (Emphasis added.) It also cited *Black's Law Dictionary* and this court's caselaw, including the 1936 case *White v. Welling*, 57 P.2d 703 (Utah 1936). The Legal Opinion concluded that "the Move to Amend petition does not qualify as a proper initiative under the Utah Constitution and statutes and the City Recorder is therefore required to reject it as legally insufficient." The City subsequently informed Move to Amend that their Petition would not be placed on the ballot.

¶4    Caleb Proulx, a registered voter in Salt Lake City, filed a Petition for Extraordinary Relief in this court, asking us to compel the Recorder to place the initiative on the City's November 2012 ballot. The City declined to submit a brief in this proceeding, as is its prerogative under rule 19(c) of the Utah Rules of Appellate Procedure. However, a representative of the City did appear at oral argument and answered questions from the court. The City's representative informed the court that a decision was necessary by

---

[1] The substance of the Petition was as follows:

RESOLVED, the People of Salt Lake City, Utah, stand with the Move to Amend campaign and cities and counties across the country to defend democracy from the corrupting effects of undue corporate power by amending the United States Constitution to establish that:

1.  Only human beings, not organizations, are endowed with constitutional rights, and,

2.  Money is not speech, and therefore regulating political contributions and spending is not equivalent to limiting political speech.

BE IT FURTHER RESOLVED, that the People of Salt Lake City, Utah hereby instruct our state and federal representatives to enact resolutions and legislation to advance this effort.

August 30, due to the schedule for its preparation of the ballot. We denied Mr. Proulx's petition on July 31.

## STANDARD OF REVIEW

¶5      "Petitions for extraordinary relief are governed by rule 65B of the Utah Rules of Civil Procedure. . . . The ultimate decision as to whether to grant or deny a petition lies within the sound discretion of this court." *Salt Lake Legal Defender Ass'n v. Atherton*, 2011 UT 58, ¶ 9, 267 P.3d 227.

## ANALYSIS

¶6      Mr. Proulx offers five arguments in support of his petition for extraordinary relief. First, he argues that the text of our state constitution does not limit the power of popular initiative to initiatives that, if passed, will constitute binding law. Second, he argues that our precedents holding to the contrary are inconsistent with the constitution. Third, he argues that the principle of separation of powers does not prohibit the placement of a purely advisory initiative on the ballot. Fourth, he argues that forbidding advisory initiatives violates the First Amendment of the United States Constitution. Fifth and finally, he argues that allowing advisory initiatives would benefit the public. We are not persuaded by his arguments, and accordingly deny his petition for extraordinary relief.

¶7      First, the text of the constitution: "The Legislative power of the State shall be vested in [both] . . . the Legislature . . . and . . . the people of the State of Utah . . . ." UTAH CONST. art. VI, § 1(1). "The legal voters of the State of Utah . . . may . . . initiate any desired *legislation* and cause it to be submitted to the people for adoption upon a majority vote . . . as provided by statute . . . ." *Id.* art. VI, § 1(2) (emphasis added). Thus, article VI specifies the nature of the "[l]egislative power" vested in the people: they may "initiate any desired *legislation*." *Id.* (emphasis added).

¶8      "In interpreting the state constitution, we look primarily to the language of the constitution itself . . . . as it would be understood by persons of ordinary intelligence and experience." *T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 30, 254 P.3d 752 (internal quotation marks omitted); *see also id.* ¶ 31 (citing *Black's Law Dictionary* to support our conclusion that the meaning of a constitutional term was "clear and unambiguous").

¶9      Legislation is defined as "[t]he process of making or enacting a *positive law*" and "[t]he law so enacted." BLACK'S LAW DICTIONARY 982 (9th ed. 2009) (emphasis added). Positive law, in

turn, "typically consists of enacted law—the codes, statutes, and regulations that are *applied and enforced* in the courts."*Id.* at 1280 (emphasis added); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1291 (1961) (defining legislation as "the exercise of the power and function of *making rules* (as laws, ordinances, edicts) having the *force of authority*" (emphases added)). These sources confirm that "legislation" means law that has positive, binding effect. A resolution declaring generally that corporations are not people, and urging (with no binding force) efforts to amend the United States Constitution to that effect, is not within the scope of the "legislation" that article VI empowers the people to propose by initiative.

¶10   Mr. Proulx argues that this is a "hyper-technical, un-imaginative, and too-literal" construction of the constitutional term "legislation." However, as explained above, this is the meaning found not only in a specialized legal dictionary, but also in a dictionary for general use. Mr. Proulx cites no alternatives supporting another common understanding of "legislation." Instead, he refers to opinions of this court.

¶11   Mr. Proulx quotes *Carter v. Lehi City*: "Legislative power generally (a) involves the promulgation of laws of general applicability; *and* (b) is based on the weighing of broad, competing policy considerations." 2012 UT 2, ¶ 34, 269 P.3d 141 (emphasis added). This quotation does not contradict our construction of the term "legislation," but rather strengthens it. While the Petition contains broad statements of policy (corporations should not be regarded as persons with rights; money is not speech), it does *not* propose a "law[] of general applicability." *Id. Carter* defines "[l]egislative power" in the conjunctive: promulgation of a general law *and* a basis in policy consideration. *Id.* The Petition at most meets only the second half of the definition. It fails to meet the first, and is therefore not a valid exercise of that aspect of the legislative power retained by the people in their power of popular initiative.

¶12   He also quotes *Mouty v. Sandy City Recorder*: "[A]ll acts taken by a city council in a city organized pursuant to the council-mayor form of government are necessarily legislative and subject to referenda." 2005 UT 41, ¶ 36, 122 P.3d 521. But in that opinion, we considered whether a city ordinance that amended land use rules was administrative or legislative in nature. *See id.* ¶¶ 1, 22. We determined that it was legislative in nature, and that it was subject to referendum. *Id.* ¶¶ 36, 40. Nowhere in that opinion did we discuss the power of popular initiative, let alone the question

specifically presented here of what the boundaries of that power are.

¶13 Mr. Proulx further submits that this narrow construction of "legislation" is belied by statute. He points to section 20A-7-101(12)(a) of the Utah Code, which defines "[l]ocal law," for purposes of Title 20A, Chapter 7 ("Issues Submitted to the Voters"), to "include[] an ordinance, *resolution*, master plan, and any comprehensive zoning regulation adopted by ordinance *or resolution*." (Emphases added.) This, he argues, is a more "granular" definition of "the actual limits of the people's legislative power. . . . and it plainly contradicts the narrow interpretation of 'legislation' that is currently the law." Again, we disagree. This definition of "local law" is used elsewhere in Chapter 7 to distinguish those pieces of "desired legislation" that are subject to local as opposed to state initiatives, *id.* § 20A-7-102(1)(a)-(b), and to identify which laws are subject to local referenda, *id.* § 20A-7-501(3)(c). We do not understand this definition of "local law" to contradict our construction of the constitutional term "legislation."

¶14 Second, our caselaw: We determined that purely advisory statements were inappropriate subjects for initiative in *White v. Welling*, 57 P.2d 703 (Utah 1936) (per curiam). In that case, citizens sought to compel the secretary of state to place certain petitions on the statewide ballot. *Id.* at 703, 705–06. We held that the secretary had discretion

> to determine whether the document or instrument submitted and purporting to contain the proposed law to be initiated has the *semblance of a law*, or [whether it] is such a matter as is not properly the subject of the [initiative power]. That is to say, the secretary of state would not be required, for instance, to submit to the people (a) something merely calling for their *opinion or other belief*; or (b) something which, if voted on favorably by the people, would not have any of the *characteristics or attributes of a law*.

*Id.* at 705 (emphases added); *see also Salt Lake on Track v. Salt Lake City*, 939 P.2d 680, 682 (Utah 1997) ("[A] public official to whom an initiative or referendum petition is presented for filing does have the authority to reject that petition if, in fact, it is legally insufficient or is directed to a matter that is not subject to an initiative or referendum."). This conclusion—that the responsible public official has the authority to reject an initiative that lacks "the characteristics or attributes of a law"—follows logically from the plain meaning of the constitutional language restricting the initiative power to

"legislation," as discussed above.

¶15   Mr. Proulx argues that a recent opinion of ours casts doubt on this longstanding rule. In *Carter*, we observed that "article VI recognizes a single, undifferentiated 'legislative power,' vested both in the people and in the legislature." 2012 UT 2, ¶ 22. But that opinion considered whether a city could refuse to accept initiatives regulating city employees' salaries and residency requirements. *Id.* ¶ 1. The question was whether these initiatives were administrative in nature, and therefore not appropriate subjects for a popular initiative, or legislative in nature and therefore within the initiative power established in article VI. *See id.* ¶ 16. We determined that the initiatives were "proper exercises of legislative power." *Id.* ¶ 19. But whatever their nature, they were not purely advisory because they sought to alter requirements and compensation for public employment. *Carter* did not, therefore, affect the rule announced in *White*. Accordingly, the teaching of our caselaw remains intact: the initiative power is limited, and its limitations do not encompass resolutions that are purely advisory. "Whether on a statewide or local basis, the people may propose any measure that is 'desired'—so long as it is 'legislation' . . . ." *Id.* ¶ 30 (quoting UTAH CONST. art. VI, § 1(2)(a)(i)(A)).

¶16   Third, the principle of separation of powers: The Legal Opinion from the City Law Department said the following:

> If the people's legislative power is coextensive with the Legislature's legislative power, why can't the people express their opinions on similar issues [as those treated in legislative resolutions] by initiative? The answer is that the Legislature's and the people's "legislative power" under Article VI of the Utah Constitution is "legislative power" in a separation of powers sense, *see* Article V, not "legislative power" in the general sense of whatever actions a legislative body is authorized to take. In a separation of powers form of government, expression of opinions is not unique to the Legislative Branch.

¶17   Mr. Proulx argues that the principle of separation of powers does not prohibit popular initiatives that are purely advisory. We agree, but we do not think this is what the City Law Department meant in the passage of its Opinion quoted above. Rather, we understand it to mean—and we agree—that article VI defines the "legislative power" as opposed to the "executive power" of article VII and the "judicial power" of article VIII. Article VI's

reference to "legislative power" does not empower the people to do all things the legislature does.[2] It only empowers the people to "initiate any desired legislation" through the initiative process, as explained above.

¶18    "The Legislative power of the state shall be vested in: (a) . . . the Legislature of the State of Utah; and (b) the people of the State of Utah as provided [below]." UTAH CONST. art VI, § 1(1). We observed in *Carter* that "[n]othing in the text or structure of article VI suggests any difference in the power vested simultaneously in the 'Legislature' and 'the people.'" 2012 UT 2, ¶ 22. But as explained above, *Carter* examined and defined the "legislative power" *in contrast to* the executive and judicial powers. *Carter* did not change the requirement that direct popular involvement in the legislative process be limited to "legislation." *Id.* ¶ 18 ("[T]he people may initiate legislation, but they lack the authority to execute the law or to adjudicate it."). For the reasons explained above, both the text of the constitution and our caselaw require that the power of popular initiative be exercised only to propose "legislation." "Legislation," in turn, must have the characteristics of binding law, and may not include a purely advisory resolution such as the one proposed by the Petition in today's case.

¶19    Fourth, the First Amendment: Mr. Proulx argues that the prohibition on advisory initiatives violates the right of free speech. But none of the cases he cites in support of this argument compel that conclusion, *see, e.g.*, *Meyer v. Grant*, 486 U.S. 414, 416 (1988) (law against paying petition circulators violates First Amendment), and other federal authority specifically weighs against it, *see Georges v. Carney*, 691 F.2d 297, 300 (7th Cir. 1982) (noting that the parties agree that "there is no constitutional right to use the ballot box as a forum for advocating a policy . . . and [a state] therefore has no constitutional obligation to allow advisory questions to be placed on the ballot"); *see also Protect Marriage Ill. v. Orr*, 463 F.3d 604, 606 (7th Cir. 2006) ("A state no more has a federal constitutional obligation to permit advisory questions on its ballot than it has to permit them

---

[2] For example, the legislature issues subpoenas in furtherance of its oversight power. *See In re McCully*, 942 P.2d 327, 328–29 (Utah 1997) (legislative subpoena issued to guardian ad litem in furtherance of general audit of foster care system). Mr. Proulx conceded at oral argument that the people cannot issue such subpoenas through initiative. He therefore logically concedes that the power of popular initiative is *not* fully coextensive with the functions performed by the Legislature.

to be painted on the walls of the state capitol.").

¶20    Fifth and finally, the question of public policy: Mr. Proulx argues that removing the prohibition against advisory initiatives would educate the voting public and foster participation in the political process. This may be true, and if true, it is a good argument for amending the constitution to permit such initiatives. But our constitution, both in its plain language and as interpreted in our caselaw, does not so permit.

## CONCLUSION

¶21    The power of popular initiative in Utah does not encompass initiatives that are purely advisory. Accordingly, the petition for extraordinary relief is denied.