**2025 UT App 28**

# THE UTAH COURT OF APPEALS

WALMART REAL ESTATE BUSINESS TRUST, WALMART STORES INC.,
AND SAM'S REAL ESTATE BUSINESS TRUST,
Appellants,
*v.*
TAX COMMISSION, SALT LAKE COUNTY BOARD OF EQUALIZATION,
AND SALT LAKE COUNTY,
Appellees.

Opinion
No. 20220655-CA
Filed March 6, 2025

Second District Court, Farmington Department
The Honorable David M. Connors
No. 200700770

David J. Crapo and John T. Deeds,
Attorneys for Appellants

Derek E. Brown, Erin T. Middleton, Steve Geary,
Laron J. Lind, and Joshua R. Nelson, Attorneys for
Appellee Tax Commission

Simarjit S. Gill, Timothy A. Bodily, and Perrin E.
Love, Attorneys for Appellees Salt Lake County
Board of Equalization and Salt Lake County

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1     At issue in this case is the 2016 fair market value, for property tax purposes, of three large retail properties owned by Walmart Real Estate Business Trust, Walmart Stores Inc., and Sam's Real Estate Business Trust (collectively, Walmart). In a nutshell, Walmart believes that its properties are worth a lot less

than does the relevant assessing entity, Salt Lake County (the County). Walmart challenged the County's assessed value in an administrative proceeding before the Utah State Tax Commission (the Tax Commission). Neither side was happy with the decision the Tax Commission rendered in that proceeding, and both sides elected to challenge it in a trial de novo in district court. After an eight-day bench trial, the district court concluded that neither side had carried its burden of proving, by a preponderance of the evidence, that its proposed value was "more accurate than any other value." *See T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 17, 254 P.3d 752. And after considering the entire record presented, including the Tax Commission's decision, the district court found that the fair market value of Walmart's properties was—more or less, with minor adjustments—the value that had been assigned to those properties by the Tax Commission.

¶2 Walmart now appeals from the district court's decision, and it raises both procedural and substantive arguments. On the procedural side, it asserts (among other things) that, by considering and largely agreeing with the Tax Commission's valuations, the court failed to conduct the sort of "de novo" review contemplated by the governing statute. And on the substantive side, it asserts that the court applied an incorrect definition of "fair market value." For the reasons discussed, we reject Walmart's arguments and affirm the court's valuation.

BACKGROUND

¶3 The three properties at issue in the case are all located in Salt Lake County: (1) the Walmart Supercenter in West Valley City, (2) the Walmart Supercenter in South Jordan, and (3) the Sam's Club in South Jordan. For the 2016 tax year, the County assessed these properties as follows: $18,183,100 for the West Valley Supercenter; $20,296,400 for the South Jordan Supercenter; and $13,873,200 for the Sam's Club. Walmart disagreed with these assessments, and it appealed them to the Salt Lake County Board

of Equalization (the Board), which primarily affirmed the assessments, although it did make a small downward adjustment to the value of the Sam's Club.

¶4     Walmart then appealed the Board's decision to the Tax Commission, which held a formal two-day evidentiary hearing. At that hearing, the Tax Commission heard testimony from expert real estate appraisers retained by both sides, who had reached starkly different conclusions about the value of the properties. J. Philip Cook testified for Walmart, and he offered his opinion that the three properties were worth $12,100,000, $15,300,000, and $11,400,000, respectively. Kerry M. Jorgensen testified for the County, and he offered his view that the three properties were worth $23,260,000, $26,000,000, and $15,000,000, respectively. The major point of dispute between the appraisers—and therefore between the parties—concerned whether and to what extent the properties' current use by Walmart should be factored into the valuation equation, or whether the properties should be valued solely as if they were being sold to a "second-generation user" for some use (e.g., big box retail) other than as a supercenter or a warehouse club.

¶5     After the hearing, the Tax Commission took the matter under advisement, and a few months later it issued a lengthy written decision. The Tax Commission found portions of each appraiser's approach compelling, but also found other portions unpersuasive, and it ultimately settled on valuations for the properties that were in between the two experts' valuations: it found that the three properties were worth $18,555,000, $19,545,000, and $13,373,000, respectively.

¶6     Walmart was dissatisfied with the Tax Commission's decision, and it opted to challenge that decision by filing a petition for judicial review in the district court and asking that the case be

assigned to a tax judge.[1] The County responded by filing a cross-petition for judicial review and by also asking that the case be assigned to a tax judge. The matter eventually proceeded to a bench trial, which took place over the course of eight days: seven days (five full days and two half days) for presentation of evidence and another half-day for closing arguments.

¶7     As the initial appellant, Walmart presented its case-in-chief first, and it called the same appraisal expert (Cook) as it had in front of the Tax Commission. In his trial testimony—which lasted a day and a half—Cook discussed his valuation methods, including his understanding of the concept of "fair market value." Cook explained that he had used both the income and sales comparison approaches in determining the value of Walmart's properties, just as he had before the Tax Commission. Cook

---

1. As discussed more fully below, *see infra* Part I.B, Utah litigants dissatisfied with a decision rendered by the Tax Commission have two options: they can file a "petition for judicial review" in either the district court or in the appellate courts. *See* Utah Code § 59-1-602(1). Here, Walmart filed its challenge in district court, and it correctly did so in Salt Lake County's Third District Court. *See id.* § 59-1-602(1)(b) (stating that petitions for district court review are to be filed "in the district court located in the county of residence or principal place of business of the affected taxpayer"). However, in its petition Walmart requested that the case be assigned to a "tax judge," one of several specially designated and trained district judges from across the state who have "volunteer[ed] as tax judges." *See* Utah R. Jud. Admin. 6-103(1), (2). The case was then randomly assigned to Judge David M. Connors, one of the specially designated tax judges. The fact that Judge Connors was a judge in the Second District Court (rather than the Third District Court) did not draw any objections from the parties at the district court level, and no party raises any venue objection here on appeal. We therefore consider any potential objections regarding venue to have been waived by the parties.

concluded that the Walmart properties' "highest and best use" "is for big box retail." After summarizing his approach, Cook concluded that the properties in question should be valued at $12,400,000, $15,100,000, and $11,300,000, respectively—values that were similar to, but slightly different from, the values he had advanced during the Tax Commission proceeding.

¶8 On the morning of the third day of the trial, after Walmart had completed its case-in-chief but before the County began its presentation, the court mentioned that its file "seem[ed] to be missing any copy of the Tax Commission's underlying rulings." Walmart responded by asserting that, in the de novo proceeding, the Tax Commission's ruling was not "controlling or relevant," but it also acknowledged that the court had "request[ed] a copy" of that ruling at a previous pretrial conference and that Walmart (in response to the court's request) had "submitted a copy" of the ruling to the court's clerk via email. The court stated that it had requested a copy because the governing statute required the Tax Commission to "certify a record of its proceedings to the district court," a requirement the court interpreted as mandating that the Tax Commission's ruling be placed in the court's file for consideration during the "trial de novo."

¶9 Following this discussion, the County began its presentation, and it also called the same appraisal expert (Jorgensen) as it had in front of the Tax Commission. In his trial testimony—which lasted nearly two full days—Jorgensen discussed the methodology he used to value the three properties at issue. He explained that, when valuing a property, he considered its "highest and best use," and he stated that for some properties, including Walmart's properties, the properties' current use can be considered their highest and best use. And he testified that, in valuing the Walmart properties, he used the income, sales comparison, and cost approaches. Jorgensen was asked to explain whether, and how, his valuations at the time of the trial de novo were different from the valuations he had offered

to the Tax Commission. In the end, he testified that the properties should be valued at $22,200,000, $24,600,000, and $16,000,000, respectively—figures that were similar to, but somewhat different from, those he had offered before the Tax Commission.

¶10 On cross-examination, Walmart questioned Jorgensen at some length about the criticisms that the Tax Commission, in its written ruling, had leveled against his conclusions. For example, Walmart's counsel asked Jorgensen directly whether the Tax Commission had "disagreed with [his] premise of value," and at one point Walmart's counsel asked Jorgensen to read aloud certain portions of the Tax Commission's ruling.

¶11 Both Walmart and the County were allowed to make rebuttal presentations; Walmart called two additional appraisers—neither of whom appear to have testified before the Tax Commission[2]—who offered critiques of Jorgensen's testimony. In addition, both Walmart and the County re-called their respective main experts to the stand. During Jorgensen's rebuttal testimony, he was asked numerous questions about the differences between his appraisal and Cook's, and specifically about ways that Jorgensen thought Cook had changed his appraisal based on "issue[s] that came up at" the Tax Commission. Jorgensen also again discussed how his testimony at trial "differed from the appraisals that he presented to" the Tax Commission. During cross-examination, Walmart's counsel asked Jorgensen a number of questions about his testimony before the Tax Commission. Indeed, on at least two occasions, Walmart's counsel played for Jorgensen excerpts from the audio recording

---

2. The record submitted to us does not include the full record of the Tax Commission proceedings. As best we can tell, while one of the additional appraisers helped Cook prepare the appraisal report Walmart submitted to the Tax Commission, neither of them actually testified during the Tax Commission proceedings.

of his testimony before the Tax Commission and asked Jorgensen specific questions about those portions of his testimony.

¶12    At one point during the trial, after apparently having finally reviewed the Tax Commission's ruling, the court informed the parties that it had questions about how the Tax Commission had computed the "square footage number" for one of the properties. The next day, the attorneys and the court engaged in a discussion regarding the square footage issue, including a partial stipulation, and Walmart's counsel expressed its view that the discussion "should answer all of [the court's] questions . . . regarding the Tax Commission decision."

¶13    After completion of Walmart's and the County's evidentiary presentations, the court asked the attorney representing the Tax Commission—nominally a party to the proceeding and which was represented by counsel during the entire trial—whether the Tax Commission would be presenting any witnesses, and the attorney answered in the negative.

¶14    Shortly thereafter, the court again inquired about whether a record of the Tax Commission proceeding would be transmitted to the district court. A few minutes later, a discussion ensued about the procedural posture of the case, and the court stated its understanding of its task: to "consider the competing appraisals" submitted by Walmart and the County and "to review and consider and weigh those appraisals against other valuations that have been made in the case, including the Tax Commission's valuation and the . . . property assessor's valuations, and ultimately to do an independent analysis" of the value of Walmart's properties and issue a decision, "which could include . . . affirming, modifying, [or] remanding" the Tax Commission's "conclusions." The County agreed with the court's assessment of its procedural task. But Walmart took "a little bit of [an] exception to" that assessment, offering its view that the court was to conduct a "de novo review" of the matter. The court responded by stating

that it "absolutely agree[d] with that observation" and that it would conduct a "de novo review and an independent analysis."

¶15 A few weeks after the evidentiary presentations were completed, and after allowing the Tax Commission to submit a post-trial brief, the court held a hearing for the purpose of allowing the parties to present closing arguments. At the beginning of that hearing, the court asked the parties if they "ha[d] an objection" to the court supplementing the "exhibits . . . by adding th[e] documents from the Tax Commission record." Walmart responded that it "would probably object to [the Tax Commission documents] being added as exhibits" but that it had "no problem with it being the certified record from the Tax Commission before the Court." When asked about whether there was truly a meaningful difference between admitting the Tax Commission record as exhibits versus transmitting it to the court as part of the certified record, Walmart responded that "an exhibit is something where" there was "a witness before the Court" and that witness "was subject to cross-examination." The court then asked whether Walmart was suggesting that the court "does not have the ability to look at those documents and consider them." Walmart then reiterated that it discerned "a difference between the certified record and an exhibit," but that, regardless, "the Court is at liberty to look at those documents and *do with them as it pleases*." (Emphasis added.) After further discussion, the court decided that it was "going to take judicial notice that [the Tax Commission documents] were part of the record before the Tax Commission, and make them part of this record, and only for those limited purposes that this court may review them in the context of making its final decision in this matter." In doing so, however, the court noted that it was "not intending to give anything in that record any greater weight than anything else."

¶16 Following this discussion, the attorneys presented their closing arguments. At one point, the court asked Walmart's counsel what he believed Walmart needed to prove, and

Walmart's counsel stated that Walmart had to show "that the value that [it] put forth is better than the value that is put forth by anybody else." At the conclusion of the arguments, the court took the matter under advisement.

¶17   Several weeks later, the court issued a written ruling, setting forth its findings of fact and conclusions of law. At the outset of its decision, in a section entitled "Standard of Review," the court set forth its understanding of the applicable procedure. It observed that it was conducting a "trial de novo" in which it "must make a new and independent assessment of property value without relying on or deferring to previous [Tax] Commission assessments." The court noted, however, that it was statutorily permitted to "affirm, reverse, modify or remand" the Tax Commission's order and that it therefore needed to at least "consider" that order as part of its obligation to "consider[] the evidence as a whole." And the court observed that it was possible to "be convinced that the [Tax Commission] has determined the most accurate valuation" of the properties, so long as the court "arrives at that conclusion by considering the evidence as a whole" and not by "giving deference to" the Tax Commission's decision. Finally, the court observed that both Walmart and the County—as cross-challengers to the Tax Commission's decision—each bore a burden to "show by a preponderance of the evidence that its proposed valuation is more accurate than any other value," and it offered its view that the Tax Commission's valuation was "another value that the [c]ourt must consider when determining whether either party has met its burden."

¶18   On the merits of the valuation question, the court evaluated the evidence presented by both sides, including the experts' extensive testimony. However, the court stated that it was "not convinced that either party's valuation [was] particularly persuasive." It found that Walmart's experts "significantly undervalue[d] the properties" because they relied too heavily "on sales of vacant properties to second-generation

users" and because they were too unwilling "to consider that the highest and best use of these properties might actually be as supercenters . . . and a warehouse club," the very uses to which the properties were then being put. But it also found that Jorgensen had "significantly overvalue[d]" the properties due to "a stubborn insistence on understating the depreciation/obsolescence factor," thus "lend[ing] credence to the criticism that he appear[ed] to be valuing the properties in connection with their value to Walmart alone."

¶19 The court made specific findings that "the highest and best use of the properties" is their current use as supercenters and a warehouse club, and that the properties were "much closer to [the special-purpose property] end of the spectrum" than to the "single-family houses" end of the spectrum. In making this finding, the court noted that "there is not the slightest indication of any intent by [Walmart] to discontinue using the properties for those purposes, and both sides agree that the properties have significant remaining useful life." The court stated that "to value the properties as if their only possible use is to be converted to 'big box retail' by second-generation users would result in a significant undervaluing of the properties."

¶20 Due to the infirmities it found in both sides' appraisals, the court turned to the Tax Commission's decision, and it concluded that "the valuations set forth [there] do not suffer from the same deficiencies and biases displayed by the competing extreme valuations presented" by the parties. The court offered its view that each side had "done a good job of demonstrating the deficiencies in the opposing party's analysis," but determined that "neither [side] ha[d] successfully demonstrated that its valuation [was] more correct than the valuation set forth in the [Tax] Commission decision." The court thus determined that, based on the preponderance of the evidence presented, including the Tax Commission's decision, the methodologies used by the Tax Commission led to the most accurate valuation of the

properties. However, the court made a square footage adjustment regarding the South Jordan supercenter, finding that it was larger than the Tax Commission had found. Using the adjusted square footage numbers and the Tax Commission's methodology, the court found that the fair market value of the three properties was $18,555,000, $19,932,000, and $13,373,000, respectively.

ISSUES AND STANDARDS OF REVIEW

¶21 Walmart now appeals, and it raises two categories of challenges. First, it raises procedural objections, asserting (among other things) that the district court, by considering and ultimately largely agreeing with the Tax Commission's valuations, failed to conduct the sort of "de novo" review contemplated by the governing statute. Walmart's procedural objections raise questions of statutory interpretation, and on such issues we afford no deference to district court decisions. *See T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 9, 254 P.3d 752 ("The interpretation of a statute is a question of law, which we review for correctness."); *see also Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035 ("The interpretation of a rule of procedure is a question of law that we review for correctness." (cleaned up)).

¶22 Second, Walmart raises substantive objections to the district court's ultimate finding regarding the "fair market value" of the properties. Walmart attempts to cast these arguments as legal objections, asserting that the court applied the wrong legal definition of "fair market value." To the extent that Walmart raises questions about the court's interpretation of the statutory definition, we will review for correctness. *See T-Mobile USA*, 2011 UT 28, ¶ 9. But to the extent that Walmart's objections implicate the propriety of the court's factual findings, we will review deferentially, and we will disturb those findings only if Walmart can demonstrate clear error. *See id.* ("We review the district court's factual findings for clear error." (cleaned up)).

ANALYSIS

I. Procedural Issues

¶23　We begin by addressing Walmart's procedural objections, which—as we understand them—fall into two categories. First, Walmart raises what amounts to an evidentiary objection: it asserts that the district court should not have admitted the Tax Commission's decision into its file at all. Second, it raises a wider-ranging procedural objection: it asserts that by considering the Tax Commission's decision in connection with its valuation determination, the court failed to conduct the sort of "trial de novo" contemplated by the relevant statute. We discuss each objection, in turn, and find neither one persuasive.

A

¶24　Walmart's first procedural objection is that the district court should not have "supplemented the record to include the Commission's decision after the close of evidence." This objection is not well taken, for two reasons.

¶25　As an initial matter, Walmart failed to preserve any objection to the court's admission of the Tax Commission record. At the outset of the closing argument hearing, the court engaged in a discussion with the parties about the Tax Commission record and, after some back-and-forth, Walmart's counsel acknowledged that the court was "at liberty to look at [the Tax Commission] documents and do with them as it please[d]." By making this admission, Walmart failed to preserve any objection to the court's decision to admit the Tax Commission record into the court's file.

¶26　But even if we assume, for purposes of the discussion, that Walmart had somehow preserved an evidentiary objection for our review, that objection would have no legal basis. Utah law specifies that, "[i]n any appeal to the district court" in this context,

the Tax Commission "shall certify a record of its proceedings to the district court." Utah Code § 59-1-601(3)(a).

¶27　When presented with an issue of statutory interpretation, "our primary goal is to evince the true intent and purpose of the Legislature." *Muddy Boys, Inc. v. Department of Com.*, 2019 UT App 33, ¶ 12, 440 P.3d 741 (cleaned up). "The best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up). Indeed, when the "meaning of a statute can be discerned from its language, no other interpretive tools are needed." *Id*. ¶ 15 (cleaned up).

¶28　Here, the plain language of the statute is quite clear. Not only is the district court *authorized* to view "a record of [the Tax Commission's] proceedings," the Tax Commission is *required* to certify a copy of that record to the district court whenever a trial de novo is requested. *See* Utah Code § 59-1-601(3)(a).

¶29　Thus, in any trial de novo that is requested under the relevant statute, a copy of the Tax Commission's proceedings—including its ultimate decision—must be certified to the district court and made part of its record. In this case, then, the court did not err by supplementing the record—even after the close of evidence—and allowing the Tax Commission documents to be made a part of that record.

B

¶30　Walmart's wider-ranging objection goes to the *use* to which the district court is allowed to put the Tax Commission's decision that is statutorily mandated to be placed in its file. As Walmart sees it, the Tax Commission's decision is a "nullity" and—although part of the court's file—is not to be considered by the court during the substantive part of its valuation analysis. Walmart asserts that it chose, and was entitled to, a "trial de novo" in the district court, and it claims that the district court in this

case—by considering and ultimately agreeing with the Tax Commission's valuation methodology—failed to afford Walmart the type of "trial de novo" that it believes the statutory scheme envisions. We find Walmart's arguments unpersuasive, and we conclude that the court committed no error in its handling and consideration of the Tax Commission decision.

¶31 We begin our analysis by describing the appeal-like options available to any litigant who is dissatisfied with a decision rendered by the Tax Commission. Prior to 1993, a litigant in that situation had only one option: seek judicial review of that agency action directly in a Utah appellate court, where the court would utilize "a substantial evidence standard of review"—which was part of "the standard of review applied in traditional administrative review cases"—and would "grant the [Tax] Commission deference concerning its written findings of fact." *See T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 14, 254 P.3d 752 (cleaned up); *accord Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437–38 (Utah 1997). The "substantial evidence" standard of review "is a deferential one: . . . we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *C.R. England Inc. v. Labor Comm'n*, 2024 UT App 170, ¶ 26, 561 P.3d 213 (cleaned up), *cert. denied*, Feb. 7, 2025 (No. 20241332). "Instead, we defer to an administrative agency's findings because when reasonably conflicting views arise, it is the agency's province to draw inferences and resolve these conflicts." *Id.* (cleaned up). And "substantial evidence need not necessarily constitute a preponderance of the evidence—our supreme court has made clear that substantial evidence is more than a mere scintilla of evidence though something less than the weight of the evidence." *Id.* (cleaned up). Because appellate courts are generally not in the business of taking new evidence, judicial review proceedings filed directly with an appellate court are conducted using the factual record developed before the Tax Commission, and without the opportunity for litigants to present or introduce new evidence

that had not already been presented to the Tax Commission. This option—direct review in the appellate courts—remains available to litigants today: the governing statute allows litigants the "option" of filing a "petition for judicial review . . . in the Supreme Court or the Court of Appeals," *see* Utah Code § 59-1-602(1)(a), and if that option is selected, the reviewing court "shall . . . grant the [Tax Commission] deference concerning its written findings of fact," *id.* § 59-1-610(1)(a).

¶32 More recently, however, our legislature has amended the relevant statute to provide a second option to litigants dissatisfied with a Tax Commission decision: a "trial de novo" in the district court.[3] *See id.* §§ 59-1-601, -602(1)(a) (stating that litigants have the "option" to file a "petition for judicial review in the district court"); *see also T-Mobile USA*, 2011 UT 28, ¶ 15 ("[T]he Utah Code

---

3. The legislature first enacted the statute affording litigants the "trial de novo" option in 1993. *See Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437–38 (Utah 1997). But in 1997, our supreme court declared that enactment to be in violation of a then-existing state constitutional provision that granted to the Tax Commission—and not to the district courts— the power to "administer and supervise the tax laws of the State" and to "equalize the assessment and valuation of property within the counties." *See id.* at 441–43 (quoting Utah Const. art. XIII, § 11 (1997)). In 1998, however, "the Utah Constitution was amended to provide the Legislature with authority to grant [district] courts jurisdiction to 'adjudicate, review, reconsider, or redetermine any matter decided by" the Tax Commission "relating to revenue and taxation." *See T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 12, 254 P.3d 752 (quoting Utah Const. art. XIII, § 6, cl. 4 (1998)). Acting on this authority, our legislature "reinstated"— effective January 1, 1999—the statutory provision that had previously been declared unconstitutional. *Id.*; *see also* Utah Code Ann. § 59-1-601 compiler's notes (LexisNexis 2021). Thus, since at least 1999, both statutory options have been available to litigants.

now creates two potential avenues of review for a petitioner."). In this context, the term "trial de novo" is defined as "an original, independent proceeding, and does not mean a trial de novo on the record." Utah Code § 59-1-601(2). As already noted, upon the filing of any such petition for review in the district court, the Tax Commission is required to "certify a record of its proceedings to the district court." *Id.* § 59-1-601(3)(a). After holding the "trial de novo," the district court is required to "render its decision in writing," and it "may affirm, reverse, modify, or remand any order of" the Tax Commission. *Id*. § 59-1-604.

¶33    In this case, Walmart (and, eventually, the County as well) selected this second option: it filed a petition for judicial review in the district court and requested a trial de novo. The district court afforded the parties a trial that spanned eight days, including five full days and two half days of evidentiary presentation. The proceeding was not limited to evidence presented to the Tax Commission; indeed, both Walmart and the County were allowed to call live witnesses, including new ones who hadn't testified before the Tax Commission. And even the witnesses who had testified before the Tax Commission were not limited to simply presenting the same evidence and testimony they had presented to the Tax Commission; to the contrary, both Cook and Jorgensen offered testimony that differed in some respects from the conclusions they had provided to the Tax Commission. Simply put, the trial that the district court afforded these parties was not at all limited to the administrative record; each party was afforded every opportunity to present an entirely new case, supported by new evidence and testimony.

¶34    Nevertheless, Walmart takes issue with one procedural aspect of the trial—the district court's consideration of the Tax Commission's ruling—and asserts that the court failed to provide Walmart with the "trial de novo" to which it was statutorily entitled. In essence, Walmart asserts that a "trial de novo," as that term is used in the relevant statute, means a trial in which the Tax

Commission's ruling—although part of the district court's file—is "completely disregarded" and not given any substantive consideration. Our interpretation of the relevant statute is different from Walmart's.

¶35 That statute states that the "trial de novo" must be "an original, independent proceeding" that is different from an appeal limited to the administrative record. *See id.* § 59-1-601(2). As noted, the district court did not limit itself to the evidence submitted to the Tax Commission; instead, the court correctly conducted "an original, independent proceeding" in which it allowed the parties ample opportunity to present whatever admissible evidence they wished to present, including new evidence not presented to the Tax Commission.

¶36 The statute also contains two items of instruction regarding the treatment that is to be afforded to the Tax Commission's ruling. First, as already discussed, that ruling (along with the rest of the Tax Commission's record) is *required* to be certified to the district court. *Id.* § 59-1-601(3)(a). Thus, the Tax Commission's decision must become part of the record during the trial de novo proceedings. Second, the court at the conclusion of the trial is authorized to "affirm, reverse, modify, or remand" the Tax Commission's underlying order. *Id.* § 59-1-604. As we interpret this language, it mandates at least *some* consideration of the Tax Commission's order; after all, one cannot "affirm" or "modify" an order without first reviewing the order in question.

¶37 Interpreting this "plain statutory language," our supreme court stated that "the legislative intent" behind creation of the "trial de novo" option "was for the [district] court to make a new and independent assessment of property value without relying on or deferring to previous [Tax] Commission assessments" and "without restriction to the record before" the Tax Commission. *See T-Mobile USA*, 2011 UT 28, ¶ 13; *see also Evans & Sutherland*, 953 P.2d at 441 (Utah 1997) (stating that the statute "directs the district

court to decide the matter afresh"). In this trial, "no presumption of correctness attaches to the [Tax] Commission's assessment." *T-Mobile USA*, 2011 UT 28, ¶ 17. Instead, a litigant's "only burden is to show by a preponderance of the evidence that its proposed valuation is more accurate than any other value." *Id*.; *see also* Utah Code § 59-1-604 (noting that the burden of proof, preponderance of the evidence, falls on "the parties seeking affirmative relief").[4]

¶38 Here, the district court correctly understood and applied the statutory standard. The court repeatedly emphasized, in both comments from the bench during trial and in its written ruling, that it was conducting a new and independent proceeding and that it was not affording any deference to the Tax Commission's decision. It also emphasized that it was required to consider "the evidence as a whole," including new evidence presented during the trial. And the court correctly stated that each party's burden of proof was simply "to show by a preponderance of the evidence that its proposed valuation is more accurate than any other value." (Quoting *T-Mobile USA*, 2011 UT 28, ¶ 17.)

¶39 The district court also gave careful consideration to how it could and should treat the Tax Commission's ruling, which (as already noted) was part of the record and something that Walmart agreed the court could "look at" and "do with . . . as it please[d]." In its written ruling, the court noted its statutory authority to "affirm, reverse, modify, or remand" the Tax Commission order, and it concluded that it could not simply "ignore the [Tax] Commission decision" but, instead, had to "consider" that decision in some form. And because that decision was part of the record, the court concluded that it constituted "another value that

---

4. In this situation, because the Tax Commission was not "seeking affirmative relief," *see* Utah Code § 59-1-604, it bore no burden of proof and was under no obligation to present evidence to the district court. The parties who bore the burden, in this case, were Walmart and the County.

the court must consider when determining whether either party has met its burden of showing that its proposed valuation is more accurate than any other value." Although the court was fully aware that it could not afford any deference to the Tax Commission's ruling, it ultimately concluded that, after "taking an independent view of the evidence before it," including the Tax Commission valuation, it could—if the evidence warranted it—conclude "that the valuation determined by the [Tax] Commission is more accurate than a valuation proposed by another specific party."

¶40    In our view, the district court got the procedural aspects of this case exactly right. It afforded the parties an "original, independent proceeding" in which they were not limited to discussion of the evidence presented to the Tax Commission but, instead, were afforded the opportunity to present new evidence. *See* Utah Code § 59-1-601(2). The court correctly determined that the Tax Commission's ruling was part of its record, and it correctly determined that it needed to take notice of, and consider, that ruling so that it could determine whether to "affirm, reverse, modify, or remand" that ruling. *See id.* §§ 59-1-601(3)(a), -604. But the court was also aware that, in considering that ruling, it was forbidden from affording it any deference, and that it needed to make an independent valuation determination after considering the entire record and all of the evidence presented. We discern no error in the court's procedural approach.

¶41    Walmart resists this conclusion by directing our attention to language our supreme court used in the *Evans & Sutherland* case, where the court stated that, once a litigant selects a trial de novo in district court, "the [Tax] Commission's prior decision becomes a nullity." 953 P.2d at 443. As Walmart sees it, the court's use of the word "nullity"—which word Walmart repeats some thirty times in its briefing—means that the district court must "completely disregard[]" the Tax Commission's ruling. But we don't read *Evans & Sutherland* the same way Walmart does. In our

view, our supreme court's use of the word "nullity," in context, simply does not (and cannot) connote that the Tax Commission's ruling is to be completely disregarded in a trial de novo.

¶42 As an initial matter, the context in which our supreme court used the word "nullity" was different from the context presented here. In *Evans & Sutherland*, the court was considering whether the statute allowing district courts to conduct judicial review via trial de novo of Tax Commission decisions was constitutional, given the Utah Constitution's then-extant provision granting to the Tax Commission—and not to the district courts—the power to "administer and supervise the tax laws of the State" and to "equalize the assessment and valuation of property within the counties." *See id.* at 441–43 (quoting Utah Const. art. XIII, § 11 (1997)); *see also supra* note 3. In that context, the court's statement that the trial de novo process renders the Tax Commission's decision a "nullity" is best understood as simply an indication that the challenged statute had improperly transferred ultimate decision-making responsibility from the Tax Commission to the district court. Indeed, in that same sentence the court stated that the trial de novo process was constitutionally problematic because "it effectively eliminates the [Tax] Commission's role" as the ultimate decision-maker in property valuation disputes. *Evans & Sutherland*, 953 P.2d at 443. It is one thing to say that the trial de novo process renders the Tax Commission no longer the ultimate decision-maker (as the Utah Constitution then required); it is another thing entirely to say that the trial de novo process requires a district court to completely disregard the Tax Commission's decision and pretend that it doesn't exist. In context, we read *Evans & Sutherland* as communicating the former concept, and not the latter.

¶43 Moreover, the statutory provisions identified by the district court simply do not allow the district court to completely disregard the Tax Commission decision. As noted, that decision— along with the entire administrative record—is required to be

certified and transmitted to the district court. *See* Utah Code § 59-1-601(3)(a). And the district court must decide, at the conclusion of the trial de novo, whether to "affirm, reverse, modify, or remand" the Tax Commission's decision, a choice that is impossible to make without knowing the contents of the ruling. *See id.* § 59-1-604. In a nod to these realities, Walmart even conceded, on the morning of closing arguments, that the district court was authorized to "look at" the Tax Commission's decision and "do with [that decision] as it please[d]."

¶44 Finally, the manner in which this particular trial unfolded makes evident that—as a practical matter and almost by definition—the Tax Commission's decision is anything but a nullity in district court trials de novo. Both parties' main experts—Cook and Jorgensen—offered testimony that was, at least in part, responsive to the criticisms leveled against them in the Tax Commission's decision. And in examining Cook and Jorgensen, both parties' attorneys used the Tax Commission decision as a basis for many of their questions, and the experts testified at some length about how their current conclusions differed from the conclusions they had offered at the Tax Commission. To be sure, the Tax Commission itself—although present, through counsel, during the entire trial—chose not to present any evidence, and no expert witness offered an opinion that the Tax Commission's valuation figures were the best values for Walmart's properties. But given the way the trial unfolded, the Tax Commission's ruling was very much a part of the parties' evidentiary presentations, and the parties thus had ample opportunity to explore with the experts the basis and reasons for the Tax Commission's valuations as well as the Tax Commission's criticism of Cook's and Jorgensen's conclusions.

¶45 In this situation, the district court did not err by considering the Tax Commission's valuation figures as part of the matters presented and discussed in the case, and it did not err by treating those valuation figures as another value to be considered

when determining whether either party had met its burden of showing that "its proposed valuation is more accurate than any other value." *See T-Mobile USA*, 2011 UT 28, ¶ 17. The situation would, of course, be different if the district court had afforded deference to those figures and had determined to affirm them unless one party or the other could show that they had not been supported by substantial evidence at the Tax Commission hearing. But that is not what the court did here. The court engaged in no appellate-style examination of the evidence presented at the Tax Commission hearing, and it did not even purport to assess whether the Tax Commission's valuation figures had been supported by evidence at the Tax Commission hearing. Instead, the court correctly trained its evaluation on the evidence that had been presented to it during the eight-day trial, and it pointedly refused to afford any deference to the Tax Commission's figures. And based on its examination of all the evidence presented during the trial, it made an independent determination, applying a preponderance-of-the-evidence standard, that the Tax Commission's figures best represented the fair market value of the three properties. All of this was entirely proper.

¶46    Thus, the district court committed no procedural error in the manner in which it conducted the trial and the manner in which it considered the Tax Commission's decision to be part of the record. We therefore reject Walmart's procedural arguments.

## II. Fair Market Value

¶47    Next, we turn to Walmart's substantive objection to the district court's valuation decision: it disagrees with the court's determination of the fair market value of its properties. Yet Walmart readily acknowledges that it "has not challenged any of the [district court's] factual findings" regarding fair market value, and it does not claim that any of those findings lack support in the

evidentiary record.[5] Instead, it attempts to style its challenge as a legal one rather than as a factual one, asserting that the district court did not "apply the objective fair market value standard required by Utah law." We disagree with Walmart's characterization of its challenge, and we conclude that the district court applied the proper legal standard in making its unchallenged factual findings.

¶48 The Utah Constitution directs that "all tangible property in the State . . . shall be (a) assessed at a uniform and equal rate in proportion to its fair market value, to be ascertained as provided by law; and (b) taxed at a uniform and equal rate." Utah Const. art. XIII, § 2, cl. 1. And our legislature has defined "fair market value," in this context, as "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Utah Code § 59-2-102(13)(a).

¶49 Walmart correctly points out that the "statutory definition of 'fair market value' establishes an objective test," which requires the assessing entity to "estimate the fair market value of [the relevant] property in the abstract, not the value of the property from [the taxpayer's] unique business perspective." *See Action TV v. County Board of Equalization of Salt Lake County*, 1999 UT App

---

5. Indeed, the valuations at which the district court arrived were well within the ranges discussed by the parties' competing experts and were therefore supported by the evidence. *See Schmidt v. Utah State Tax Comm'n*, 1999 UT 48, ¶ 9, 980 P.2d 690 (stating that a reviewing tribunal "has the discretion to adopt a figure that falls somewhere between polarized estimates" (cleaned up)); *Olé Mexican Foods Inc. v. J & W Distrib. LLC*, 2024 UT App 67, ¶ 46, 549 P.3d 663 ("A factfinder generally has discretion to select any figure within the range of numbers supported by the evidence."), *cert. denied*, 558 P.3d 88 (Utah 2024).

231, ¶ 31, 986 P.2d 108. Building on the words "objective test," Walmart asserts that Utah's statutory definition of "fair market value" requires assessors (and district courts, on review) to focus solely on a property's "value in exchange," and that it forbids assessors from considering a property's "value in use." Indeed, Walmart goes so far as to suggest that "the value-in-exchange approach is the only approach that is consistent with Utah law." And Walmart asserts that the district court violated this principle here by taking into account, as part of its "fair market value" analysis, the use to which Walmart is currently putting the properties and by ultimately concluding that the properties' "highest and best use" was their current use.

¶50    But Walmart's categorical approach misses the mark. Assessment of fair market value is an inherently property-specific exercise; indeed, our supreme court has stated that "[t]he proper application of appraisal techniques depends upon varying factual circumstances that defy generalization." *Beaver County v. Utah State Tax Comm'n*, 916 P.2d 344, 355 (Utah 1996); *see also id*. ("Valuation is an art, not a science. It is a function of judgment, not of natural law." (cleaned up)); *Board of Equalization of Salt Lake County v. Utah State Tax Comm'n ex rel. Benchmark, Inc.*, 864 P.2d 882, 885 (Utah 1993) ("Despite these judicial and statutory definitions, 'market value' remains a fluid standard."). For this reason, assessments of fair market value are deemed to involve factual questions upon which assessors are afforded deference. *See T-Mobile USA, Inc.*, 2011 UT 28, ¶ 49 ("The choice of a valuation methodology and the resulting fair market value are questions of fact . . . ."); *accord Schmidt v. Utah State Tax Comm'n*, 1999 UT 48, ¶ 6, 980 P.2d 690.

¶51    Indeed, Walmart acknowledges that Utah's statutory definition of "fair market value" sometimes allows assessors to consider a property's current use. For instance, when the property at issue "is of a class not commonly bought and sold," then "the usual test" involving a hypothetical willing buyer and willing

seller "breaks down," and assessors may—in appropriate cases— factor into their valuation analysis the property's current use. *See Kennecott Copper Corp. v. Salt Lake County*, 250 P.2d 938, 940 (Utah 1952); *see also Schmidt*, 1999 UT 48, ¶¶ 5, 11–12 (affirming a valuation assessment in which, due to the uniqueness of the property, the assessor took into account the property's "value-in-use"). In such cases, taking a property's current use into account is not at odds with the traditional "fair market value" test; to the contrary, it is part of what allows unique properties to be fairly valued. *See Kennecott Copper Corp.*, 250 P.2d at 940. Our supreme court explained it this way:

> While market value is always the ultimate test, it occasionally happens that the property taken is of a class not commonly bought and sold, [such] as a church or a college or a cemetery or the fee of a public street, or some other piece of property which may have an actual value to the owner, but which under ordinary conditions he would be unable to sell for an amount even approximating its real value. As market value presupposes a willing buyer, the usual test breaks down in such a case, and hence it is sometimes said that such property has no market value. In one sense this is true; but it is certain that for that reason it cannot be taken for nothing. From the necessity of the case the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. *This is not taking the "value in use" to the owner as contradistinguished from the market value*. What is done is merely to take into consideration the purposes for which the property is suitable as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which in a general sense may be said to be the market value.

*Id.* (emphasis added) (cleaned up). The extent to which a property falls into this category is a property-specific determination that is ultimately a factual question, not a legal question. *See Schmidt*, 1999 UT 48, ¶¶ 5, 11.

¶52 In this case, the district court explained that properties fall on something of a spectrum between—on the one hand—single-family homes of a type that are commonly bought and sold and for which the "housing market is relatively active and information about sales of comparable houses is easy to gather," and—on the other hand—properties that "are so highly specialized and so uniquely customized to a single purpose that it would be almost impossible to find any buyer that would ever be 'willing' to acquire the property for anything other than perhaps the value of the underlying land." The court stopped short of making a specific finding that Walmart's properties "are true special purpose properties," but it did find that Walmart's properties are "much closer to that end of the spectrum of real property categories than to the other end of the spectrum that is best exemplified by single family houses."[6]

¶53 All of this is an inherently factual exercise. And none of it bespeaks a failure on the part of the district court to apply the

---

6. In its briefing, Walmart declares that the district court "found that the Walmart properties are *not* special purpose properties." This is a mischaracterization of the record. While the court stopped short of finding that the Walmart properties "are true special purpose properties," it certainly didn't make the opposite finding (that they are *not* special purpose properties). Stopping short of making a positive finding is not necessarily the same thing as making a negative finding. And as explained in the text, the court carefully explained that—on the spectrum between "true special purpose properties" and "single family houses"—the Walmart properties were "much closer" to special purpose properties.

correct legal definition of "fair market value." To the contrary, the court specifically emphasized that it was applying the correct statutory definition of "fair market value." On this record, neither the court's consideration of the uniqueness of the Walmart properties nor its finding that those properties' highest and best use was their current use was an indication that the court was straying from the correct legal standard. In fact, the court's analysis involved a thorough effort to examine these unique properties on their own terms and to arrive at a fair valuation of parcels that are—as the length and volume of this litigation attests—relatively difficult to value.

¶54　Accordingly, we reject Walmart's substantive challenges to the district court's valuation analysis. The court applied the correct legal standard, and its factual findings were supported by the evidentiary record and do not contain clear error.

CONCLUSION

¶55　In conducting the eight-day trial, the district court did not commit procedural error. It correctly admitted the Tax Commission documents (including the Tax Commission's ruling) into the court record, and it did not err in the manner in which it considered and took into account the valuation figures from the Tax Commission's ruling. Nor did the district court commit a substantive error. It applied the correct definition of "fair market value," and it reached factual findings regarding valuation that were supported by the evidentiary record.

¶56　Affirmed.

————————